Brewington v. Mesker.

---

HENRY S. BREWINGTON, Respondent, v. FRANK MESKER *et al.*, Appellants.

St. Louis Court of Appeals, November 22, 1892.

1. **Pleading**: GOODS SOLD AND DELIVERED. An action for goods sold and delivered lies, when goods have been sold and have been delivered by the vendor, but the vendee wrongfully refuses to accept them.

2. **Contracts**: MEETING OF MINDS. The meeting of minds which is essential to the formation of a contract is not determined by the secret intentions of the parties, but by their expressed intention, which may be wholly at variance with the former.

3. ———: ———. And under this rule it was *held* that, where a contract for the purchase of machinery of a certain make had been effected by correspondence, without specification of the date of manufacture, and the make of one year excelled that of another, a tender of the make of the latter year was sufficient, if the vendor in making the contract believed, and under all the circumstances had the right to believe, that it was what the purchaser intended.

4. **Construction of Contract:** LAW AND FACT. When, in the case of such a contract, the vendor delivers the inferior make, and the purchaser in fact intends to contract for the superior, and under the attending circumstances a controversy exists as to whether the former acted in good faith, the question is one of fact for the jury.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Frank Dawson & Garvin,* for appellants.

(1) The judgment for plaintiff being upon a petition for price of goods sold and delivered presupposes a completed delivery, and cannot stand on appeal taken where the record shows that the goods were never in fact accepted by the defendants. *Atwood v. Lucas,* 53 Me. 508; s. c., 89 Am. Dec. 713; *Evans v. Harris,* 19 Barb. 416; *Brecheisen v. Coffey,* 15 Mo. App. 84; *De Graw v. Elmore,* 50 N. Y. 1, quoted with approval in *Sumner v. Rogers,* 90 Mo. 330; *Price v. Railroad,* 40 Mo. App. 189. The defendants were not obliged to accept the presses delivered, because they differed in pattern, date of issue and construction from the presses which they had bargained for with plaintiff, solely upon his representations and descriptions of them, and they rejected them as soon as they had an opportunity for inspection or examination. *O'Donohue v. Leggett,* 31 N. E. Rep. 269; *Calhoun v. Paul,* 26 Mo. App. 274; *Cort v. Allis,* 115 U. S. 363; *Norrington v. Wright,* 115 U S. 188; *Filley v. Pope,* 115 U. S. 213; *Gaus v.*

*McGee,* 42 Mo. App. 313.   (2)   If any contract was made it was a contract to sell a cam drawing press, which had been bought new of Bliss in preference to his toggle press, and also to sell a curling press which had been bought new of Bliss at his list price of $175, and as the acts of plaintiff, disclosed by the evidence, considered in relation to these presses, are such that defendants as reasonable men were justified in believing that plaintiff intended them to understand these facts as entering into the contract as conditions precedent to a sale, the judgment cannot stand, because the evidence shows that the cam press shipped by plaintiff was bought before Bliss ever made a toggle press, and the curling press shipped was listed by Bliss at $150, and was bought from him for that price.   There is, therefore, a failure by plaintiff to comply with the conditions on his part.   *Voss v. Maguire,* 18 Mo. App. 481; *Flight v. Booth,* 1 Bing. (N. C.) 377; *Whittaker v. McCormick,* 6 Mo. App. 114; *Long Bros. v. Armsby Co.,* 43 Mo. App. 253; *O'Donohue v. Leggett,* 31 N. E. Rep. 269; *Norrington v. Wright,* 115 U. S. 188; *Filley v. Pope,* 115 U. S. 213.   (3)   The evidence does not show a valid contract for sale and purchase of these presses, because it shows that plaintiff intended to sell presses of one issue and design, and defendants intended to buy presses of an entirely different issue and design, and that there was never the requisite *consensus ad idem;* the result either of an honest mistake between business men respecting the identity of the subject-matter of the contract, or of misrepresentations and misdescriptions, either innocently or carelessly made by plaintiff respecting the presses for sale.   *Bowes v. Shand,* 2 App. Cases, 468; *Raffles v. Wichelhaus,* 33 L. J. Ex. 160; *Kennedy v. Mail Co.,* L. R. 2 Q. B. 580; *Gardner v. Lane,* 9 Allen, 492; s. c., 12 Allen, 44; *Eads v. City of Carondelet,* 42 Mo. 113; *Cangas v. Mfg. Co.,* 37 Mo.

App. 297; *Mfg. Co. v. Boderick*, 12 Mo. App. 297; *Whedon v. Ames*, 28 Mo. App. 243, 248; *Catchings v. Hacke*, 15 Mo. App. 51; *Sheldon v. Capron*, 3 R. I. 171; *Chapman v. Cole*, 12 Gray, 141; *Rupley v. Daggett*, 74 Ill. 351; Pollock's Principles of Contracts [Dickson's Ed.] p. 455; *Morrow v. Surber*, 97 Mo. 161, and cases cited. If plaintiff obtained an apparent consent from defendants through fraudulent and false descriptions and representations, or by fraudulent suppressions of the truth when it was his duty to speak, or by fraudulent acts of any kind calculated to mislead and deceive defendants into consenting where they would not have consented had they known the truth, such consent never was real, and this essential element to a contract of sale was destroyed in its inception. *Buford v. Caldwell*, 3 Mo. 479; *Smithers v. Bircher*, 2 Mo. App. 512; *McAdams v. Cates*, 24 Mo. 223; *Cahn v. Reid & Burgardt*, 18 Mo. App. 127; *Gaibout v. Clark*, 24 Mo. App. 426; *Hitchcock v. Baughan*, 36 Mo. App. 216; s. c., 44 Mo. App. 42; *Borders v. Kattleman*, 31 N. E. Rep. 19; *Mathers v. Bliss*, 22 Pick. 53; *Smith v. Richards*, 13 Peters, 26; *Doggett v. Emerson*, 3 Story, 732.

*Collins & Jamison*, for respondent.

ROMBAUER, P. J.—The plaintiff recovered judgment for $680.47, for balance and interest claimed to be due to him from the defendants on the following account for goods sold and delivered:

| | |
|---|---:|
| Bill No. 4 press | *$1000.00* |
| Bill No. 6 lathe | 262.50 |
| Bill 38 | *87.50* |
| Bill ctwg. leading | 15.00 |
| Bill die | 309.90 |
| | $1674.00 |
| Credit by cash | 1000.00 |
| Balance | $674.00 |

The defendants' answer is a general denial. The cause was tried by the court without the intervention of a jury, and no instructions were asked or given. The only error complained of is the refusal of the court to nonsuit the plaintiff, and the only controversy between the parties is as to the first and third items of the account sued on.

It appeared in evidence that the plaintiff is a manufacturer doing business in Baltimore, Maryland, and the defendants are manufacturers doing business in St. Louis, Missouri, and having occasion to use in their business the articles mentioned in the account. The entire contract between the parties was in writing, and consists in the following correspondence between them by mail and wire.

The defendants wrote to the plaintiff under date of November 3, 1890:

"Please name the lowest cash price on the following machines and dies in a lump; also itemize lowest cash price you will take for each machine or die enumerated below, and oblige:

"No. 4 Bliss drawing press. Please state if cam or toggle drawing press, and the year you bought and the price, and if you bought it new from Bliss, or did you buy it second hand.

"Two No. 38 power presses (Bliss)."

To which the plaintiff replied by letter under date of November 7:

"I will sell you the cutting dies forty per cent. from Bliss prices.

"One 4 drawing press (Bliss)—$1,200.

"These were all bought new; the drawing press is not toggle. We did not like the toggle.

"Two steam No. 38 press curling—$110 each.

"Can only offer you these subject to being unsold, as we have had large number of inquiries and offers on

entire lot.    Better wire me, if any that should suit you.
I have named a very low price, for the reason I am
compelled to vacate house few days.

"(I have to-day offered same to a Brooklyn
party.)"

And plaintiff further replied on the day next suc-
ceeding as follows:

| | |
|---|---:|
| I will sell you *No. 4 Bliss, cash* | *$2,000.00* |
| The No. 6 lathes | 525.00 |
| The No. 3 lathes | 375.00 |
| *1 No. 38 curling* | *175.00* |
| 1 32 Bliss | 450.00 |
| 1 Edgar | 100.00 |

"Will sell fifty per cent. if you wire me.    I have sold
the other presses, and can only offer these subject being
sold—I have the dies left.    Only sold presses to-day.
I have named you lower prices to-day, simply because I
have only few left.    I want to close.    Have pulleys
and shafting for sale.    I will sell you," etc.

Upon the receipt of the last letter the defendants
wired plaintiff at once:    "Will accept your offer. of
eighth for one each, numbers 4, 6, 38, and 32 Bliss
presses."

The plaintiff on receiving this message wired the
defendants for payment before shipment was made, to
which the defendants replied, under date of November
13, both by wire and mail:

The telegram was as follows:

"Ship tools.    We will send check as soon as tools
arrive in St. Louis.    Refer you to T. G. Hetzel & Son,
Baltimore, or Dunn & Bradstreet's agencies."

And the letter was as follows:

"In reply to your telegram we wired as follows:

" 'Ship tools; will send check as soon as they arrive
in St. Louis,    Refer you to T. G. Hetzel & Son, Bal-
timore, and Dunn & Bradstreet's agencies.'

"We now confirm the above, and immediately on their arrival will send check to cover.

"Trusting this will be satisfactory, and awaiting bill of lading, we are," etc.

On receipt of this message the plaintiff on November 14 drew his draft on defendants for $1,000 on account, and on the succeeding day shipped the goods to the defendants. The draft was paid by the defendants before they received the goods. The next day after the arrival of the goods, and upon their inspection, the defendants rejected them on the ground that they were different from the goods bought, and at once informed the plaintiff to that effect by letter bearing date November 25, 1890.

The evidence tended to show that Bliss, the manufacturer of these presses, published illustrated catalogues periodically, and that the defendants were in possession of these catalogues for the years 1883, 1886 and 1889, which they inspected prior to accepting the plaintiff's offer. The evidence further tended to show that the plaintiff was, shortly prior to the correspondence, in possession of Bliss' catalogues for 1883 and 1886. The evidence further tended to show that the later manufactures of Bliss, contained in his catalogues of 1886 and 1889, are superior to those mentioned in the earlier catalogues; that the price of the curling press in the catalogues of 1883 and 1886 is given at $150, and in the catalogue of 1889, at $175, and that the price of the number 4 drawing press is given in the catalogues of 1883 and 1886 at $2,000, and in the catalogue of 1889 at $2,400. The evidence also shows that, prior to 1889, the number 4 drawing presses mentioned in Bliss' illustrated catalogues had a cam movement, but in 1889 they had a toggle movement, the press being mentioned therein as a toggle drawing press. The presses

shipped by plaintiff were those mentioned in Bliss' catalogue for 1883.

The defendants contend that the court should have given their instruction in the nature of a demurrer to the evidence, because it appeared from the plaintiff's evidence that they never accepted the presses, and hence an action for goods sold and delivered could not be maintained, but plaintiff should have brought his action for a breach of the contract of sale. This argument is ingenious, but too refined. It confounds the form of action with the right of recovery. The plaintiff's right of action, in the form in which he brought it, was complete upon the sale and delivery of the goods, although his right of recovery was subject to be defeated by showing that the goods delivered were not the goods bought, or that the vendee for any cause had the right to refuse to accept them, and that he exercised that right within a reasonable time.

The defendants' next contention is equally untenable. The contract, it is true, is in writing, and its interpretation is for the court. But Bliss' catalogues of the different years are nowhere referred to in the correspondence. The court could not embody the catalogue of one year into the contract in preference to the catalogue of another year. It is evident that the defendants knew that the plaintiff did not intend to sell them a number 4 toggle drawing press, as given in the catalogue of 1889, since the plaintiff expressly stated that the press was a cam and not a toggle press, and since the original price in the correspondence is stated at $2,000, whereas the catalogue price of 1889 is $2,400. As to the curling press, the plaintiff in his first offer had fixed the price at $110 flat, and in his second offer at $175, original price, with fifty per cent. off, a fact which the plaintiff explains by stating that he himself

had paid $175 for that press, although in Bliss' catalogue of 1883 it is given at $150.

It is probable under all the evidence that the defendants intended to buy other presses than those delivered to them by the plaintiff, but there is nothing in the correspondence to show conclusively that the plaintiff was aware of that fact. The meeting of the minds, which is essential to the formation of a contract, is not determined by the secret intentions of the parties but by their expressed intention, which may be wholly at variance with the former.

If the ambiguity which arises in this case could be solved by the correspondence alone, or by surrounding circumstances which are uncontroverted, then we could review the action of the trial court in solving the ambiguity in favor of the plaintiff. *Deutmann v. Kilpatrick*, 46 Mo. App. 624, 627. But it is evident that this is a case where the ambiguity arises from controverted surrounding circumstances, raising to some extent a question of good faith. The defendants contend that, since Bliss' catalogue of 1883 gives the price of the curling press at $150, and the catalogue of 1886 at $175, they had a right to suppose that the plaintiff, in giving $175 as the original price of the curling press he offered to sell, meant thereby a curling press of 1886, and not 1883. The plaintiff, on the other hand, maintains that the prices mentioned in Bliss' catalogue of 1883 were superseded by his later catalogues, and he had a right to state the original price at $175, all the more so as he himself had paid $175 for it. So, in regard to number 4 drawing press, the defendants contend that the plaintiff intentionally misled them into the belief that he bought that press after Bliss' toggle press came into the market, which was not until 1889. This contention is based upon the fact that the plaintiff in one of his letters states that "he did not like the

toggle." But it is immaterial for the purposes of this case at what time the plaintiff bought the press, since it is evident that he might have bought a press mentioned in the catalogue of 1883 at any time thereafter. The plaintiff distinctly states that the press he offers for sale is a cam, and not a toggle press; hence, the defendants could not possibly understand that it was the press mentioned in the catalogue of 1889. Besides that, it appears by plaintiff's evidence that toggle presses were known in the market long before.

We cannot review the finding of the trial court on propositions of good faith arising in the case on controverted facts. As no instructions were asked, and all testimony bearing on that subject was admitted without objection, we are bound to presume, in support of the judgment, that the court resolved all such questions in favor of the plaintiff. There was substantial evidence tending to show that the plaintiff sold to the defendants what he had a right to assume they intended to buy. The weight of the evidence is not for our consideration.

All the judges concurring, the judgment is affirmed.