ROBERT WEINTZ, Plaintiff and Respondent, *v.* GLENN
BUMGARNER et al., Defendants and Appellants.

No. 11259.
Submitted September 13, 1967. Decided December 4, 1967.
434 P.2d 712.

S. M. Swanberg and Orville Gray, Great Falls, S. M. Swanberg (argued), Great Falls, for defendants and appellants.

Scott & Linnell, Great Falls, William M. Scott (argued), Great Falls, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal from an amended decree and judgment of the district court of Cascade County dated September 6, 1966, interpreting the provisions of a farm lease relating to sale of the leased land during the term of the lease and generally requiring specific performance of such provision by the heirs of the lessor. The decree was entered upon amended findings of fact and amended conclusion of law made by the trial judge and generally is in favor of the lessee and prospective purchaser and against the administrator and heirs of the deceased owner and lessor. More specifically, the amended decree requires the heirs owning a 29/30th interest in the lands to sell their interest to the lessee under the provisions of the lease.

The facts in this case are remarkably free from controversy

On December 10, 1959, Clark Bumgarner, the owner of approximately 410 acres of farm land in Cascade County, entered into a written lease with Robert Weintz (hereafter referred to as plaintiff) for a term of five years, containing, among other things, a provision that unless ninety days written notice of termination was given by either party prior to the expiration date that the lease would remain in effect from year to year thereafter. Plaintiff has farmed the tillable land each year thereafter. Clark Bumgarner died December 30, 1964, without having terminated the lease. His heirs are the following named persons who succeeded to fractional interests in the land involved in the following amounts: Ralph Bumgarner, Glenn Bumgarner, Myrtle Porter and Patricia Johnson, 1/6 share each; John Lutes, Gale Lutes, Kathleen Richardson and Harold Lutes, 1/24 share each; Barbara Severns, Everett Bumgarner, Eleanor Dahl, Shirley Meyer and Russell Bumgarner, 1/30 share each.

Thereafter, Glenn Bumgarner was appointed administrator of the Clark Bumgarner estate. Plaintiff contacted the administrator pointing out the provisions in the lease relative to purchase and sale of the farm lands and later made an offer to purchase them for $75,000, which subsequently was established as the appraised value of the lands in the estate proceeding. The administrator advised plaintiff that he would be given a chance to match any bid offered for the land. Subsequently, the administrator advised plaintiff that no other bids had been received, and on March 6, 1965, the administrator advised plaintiff to go ahead and make arrangements for payment which plaintiff did. Two or three days later the administrator informed plaintiff that they had received a larger bid than his, but would not disclose the amount of the bid or the identity of the bidder. Subsequently it was established that this information was false in that the other bid received was from Russell Bumgarner, an heir owning a 1/30th share, who bid $64,000 for the 29/30 interest of the other heirs in the property. Vari-

ous conversations were had by plaintiff with the administrator and the attorney for the estate, none of which resulted in disclosure to plaintiff of the amount of this other bid, the identity of the other bidder or that he would be allowed to match the other bid.

On April 23, 1965, and again sometime in May, 1965, the administrator served written notice on plaintiff of the termination of his lease. It subsequently developed that Russell Bumgarner, one of the heirs of the deceased, and one of the defendants in this case had made a written offer to purchase the farm lands for $64,000 and at one time or another all heirs entered into written agreements with him purportedly to sell their respective interest to him on this basis. It is to be noted that at no time were all the agreements of the heirs to sell in the escrow that had been set up by Russell Bumgarner therefor, and that subsequently some of these agreements were withdrawn and in one case, the guardian of an incompetent heir executed such agreement without consent or approval by the court handling the guardianship. It should be further noted that all times plaintiff has exhibited a willingness to purchase the land under the terms of the original offer of $75,000 cash.

This action was filed in the district court on May 21, 1965, against all heirs and the administrator of the estate of the lessor and landowner Clark Bumgarner, requesting a decree of specific performance and sale in favor of plaintiff together with temporary relief during the pendency of the action leaving plaintiff in possession to farm the lands involved. After a show cause hearing and trial, findings of fact, conclusions of law and decree were entered by the trial judge, generally in favor of defendants and against plaintiff. On motion by plaintiff for amendment, the trial judge granted the same and filed amended findings of fact, conclusions of law and an amended decree, generally in favor of plaintiff and against defendants. The basic difference between the two sets of findings, conclusions and decrees is that the original provided

that all owners had never formed a specific intention to sell in that defendant Russell Bumgarner had never indicated any desire or intention to sell, whereas the amended findings, conclusions and decree found a specific intention to sell by all heirs except Russell Bumgarner and decreed specific performance as to all heirs except Russell. This appeal followed from such amended decree by six of the defendants who were heirs of Clark Bumgarner, deceased, but the administrator of the estate and the other seven heirs are not parties to this appeal.

The amended decree from which this appeal is taken provides as follows:

(1) That the temporary restraining order leaving plaintiff in possession during the pendency of the action is dissolved;

(2) That the defendants (being the administrator and heirs of Glenn Bumgarner, deceased) have the right to possession of the farm lands involved subject to plaintiff's right to care for and harvest crops planted by him and growing thereon and his right to be paid for any work performed by him toward future crops;

(3) That upon payment by plaintiff to each defendant of his pro rata share of the $75,000 purchase price, each defendant is required to convey his undivided interest in the land to the plaintiff by a good and sufficient deed, excepting defendant Russell Bumgarner, and subject to the approval of the probate court for the share held by an incompetent person; and

(4) Costs are awarded to plaintiff.

The issues presented for review upon this appeal as delineated by the appealing defendants are as follows:

(1) Whether or not the language contained in provision 10C of the farm lease gives plaintiff an option or pre-emptive right to purchase the lands if the same are offered for sale by the owners.

(2) What effect, if any, is to be given to the situaton that presented itself where the owner dies and one of the heirs wanted to purchase but not sell?

(3) What effect, if any, is to be given to the situation where one of the heirs was an incompetent and no proceedings were taken in the guardianship to secure authority to enter into a contract for sale? and

(4) What effect, if any, will be given to the situation where some of the heirs withdrew their prior written agreement to sell to another heir?

The first issue in this case as set forth above involves the fundamental issue in this case, i.e., the interpretation of the lessee's right to purchase under the terms of the lease. Such right is governed by the following provision in the lease:

"10C. The owner agrees to give tenant written notice of specific intention to sell the farm and to permit the tenant to have ten days in which to arrange purchase of the farm in case he indicates an interest in buying. This does not give possession to an outside purchaser until lease has expired."

The heirs that are appealing herein argue that these words do not constitute an option to purchase because the price and terms of purchase are not set forth; that the words are vague, meaningless and void for uncertainty; and that in order to give the provision substance the court must construe this provision to grant the tenant the right to purchase upon the same terms and conditions as any other purchaser and to so construe it is to place language in the lease that the parties themselves did not use.

We construe this provision to mean that at such time as the owner forms an intention to sell the property on specific terms and conditions, such owner must (1) give the lessee written notice of his intention to sell, including the terms and conditions of sale, and (2) give the lessee ten days in which to arrange purchase of the property on the same terms and conditions. Thereafter if the lessee does not arrange such purchase with the owner, the owner is free to sell to another person subject to the existing lease.

In our view the provision in question confers a right

of pre-emption or first refusal in the lessee rather than an option in the usual sense. The distinction between the two is well explained in Volume VI, American Law of Property, § 26.64, p. 507: "A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he elects not to buy, then the owner of the property may sell to anyone." The following cases also recognize such distinction but speak in terms of options to purchase on the one hand and conditional options on the other. (Nu Way Service Stations v. Vanderberg Bros. Oil Co., 283 Mich. 551, 278 N.W. 683; In re Rigby's Estate, 62 Wyo. 401, 167 P.2d 964.)

Whatever language is used to describe the provision in question, it is clear that the right of the lessee to purchase accrues at such time as the lessor form a specific intention to sell the property for a definite price on definite terms. At such time as the owner forms such specific intention to sell, the provision in question ripens into a present enforceable contract right of the lessee. (Barling v. Horn, (Mo. 1956), 296 S.W.2d 94; Superior Portland Cement v. Pacific Coast Cement Co., 33 Wash.2d 169, 205 P.2d 597.)

In interpreting the quoted provision as we have, we consider it fundamental that such provision be given some meaning, if possible, consistent with the intention of the parties, (section 13-709, R.C.M.1947), that the language presumptively is to be construed against the promisor in case of uncertainty (section 13-720, R.C.M.1947), and that stipulations necessary to render the contract reasonable shall be implied even though not expressed in the contract itself (section 13-721,

R.C.M.1947). It must be remembered that all testimony at the trial as to the actual intentions of the parties was ruled inadmissible by the trial judge on the basis of the deadman's statute (section 93-701-3, R.C.M.1947), leaving us to construe the intentions of the parties by the language of the quoted provision. Applying the above rules of contract construction it seems apparent that this court should favor a construction that gives substance and meaning to the provision on purchase rather than adopt a construction that renders it meaningless and illusory, provided such can be done without violating the intention of the parties. The reasonable construction of the provision in the lease seems to us to be that when, as and if the lessor forms a specific intention to sell the land at a definite price, the lessee's right to purchase the land for that price vests, subject to his acceptance or rejection of purchase according to the terms of the lease. It is true, as argued by the heirs who appeal herein, that the parties did not spell out in the purchase provisions that the lessee's right to purchase was a right to purchase on the same terms and conditions as any other prospective purchaser. We feel, however, that this is an implied provision in the lease inasmuch as the whole provision is rendered meaningless without it and any other construction would render the provision illusory and unenforceable for lack of certainty. We will neither presume that the parties intended to insert a meaningless purchase clause in the lease nor that the language in such clause requires that construction.

The heirs who appeal herein further argue that regardless of the construction placed on the purchase provision of the lease, plaintiff did not take steps to exercise his right to purchase as provided in the lease inasmuch as plaintiff at no time arranged purchase of the land, notified the heirs or administrator of his decision to exercise his right to purchase, or tendered the purchase price. Suffice it to say without extended discussion that this argument avails defendants nothing in the instant case for the simple reason that any failure on

plaintiff's part to exercise his purchase rights under the terms of the lease was the direct result of a breach of the provisions of the lease requiring written notice of specific intention of the administrator and heirs to sell, nondisclosure of the identity of the prospective purchaser or purchase price to plaintiff, and falsification and deceit practiced by the administrator and Russell Bumgarner on the other heirs in securing their agreements to sell their interests to Russell for less than the appraised value and offer of plaintiff. At this point it is to be observed that the heirs that are appealing herein are prosecuting this appeal collectively, not individually; as a result all stand in the shoes of Russell Bumgarner insofar as this appeal is concerned. Russell Bumgarner clearly comes before this court with "unclean hands" because of his actions herein set forth previously and the other appealing heirs are tarred with the same brush by presenting this appeal collectively with him.

Performance by plaintiff according to the terms of the purchase provision was rendered impossible by the administrator and Russell Bumgarner because plaintiff was denied any information as to the proposed purchase price or the identity of the purchaser by written notice or otherwise. Under these circumstances neither the administrator nor the heirs can defeat plaintiff's rights under the purchase provision in the lease. (Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320.)

The additional argument is made by these defendants who prosecute this appeal that irrespective of the rights and liabilities of the original lessor, the purchase provision in the lease is not a "covenant running with the land," and therefore is not enforceable against the heirs of the lessor. The following provision is contained in the lease:

"11. This lease shall bind and benefit the heirs and other successors of the owner and tenant."

A provision in a lease giving the lessee the first privilege of purchasing the leased land constitutes a "covenant running with the land" in the absence of language indicating an inten-

tion to confer a right personal to the original parties. (51 C.J.S. Landlord and Tenant § 80, p. 633; Nu Way Service Stations v. Vandenberg Bros. Oil Co., supra; Raco Corp. v. Acme-Goodrich, Inc., 235 Ind. 67, 131 N.E.2d 144). No such restrictive language exists in the instant case; on the contrary the language of section 11 hereinbefore quoted is expressly nonrestrictive and clearly indicates that the rights of the original parties are not personal to them but pass to their heirs and successors in interest.

The appealing heirs further contend that if the purchase provision of the lease is a "covenant running with the land" the heirs of the owner stand in his shoes and all must join at one time in forming a specific intention to sell before plaintiff's rights of purchase vest or accrue. They point out that since Russell Bumgarner at no time formed a specific intention to sell and that as no approval of the court was secured by the guardian of an incompetent heir to sell her interest in the leased property, and further that at no time did the remaining heirs form a specific intention to sell at any given time simultaneously, that plaintiff's rights to purchase never came into existence.

Upon the death of the owner and lessor, Clark Bumgarner, title to the property in question, subject to the provisions of the lease, passed immediately to his heirs as tenants in common. The purchase provision in the lease, being a "covenant that runs with the land," is apportioned among the heirs according to their respective interests in the whole of the property and binds them in the same manner as if they had personally entered into the covenant (see section 58-304, R.C.M. 1947). Section 58-311, R.C.M.1947, provides for apportionment of covenants in the following language:

"Where several persons, holding by several titles, are subject to the burden or entitled to the benefits of a covenant running with the land, it must be apportioned among them according to the value of the property subject to it held by them respec-

tively * * *." Thus the burden of the purchase provision of the lease passed by operation of law to the heirs as owners of undivided interests in the whole of the property who became individually and separately bound to the extent of their respective interests. Upon formation of a specific intention by each heir to sell the whole of his individual interest in the property, plaintiff's right of purchase according to the terms of the lease vested and accrued as to the interest of each such heir without regard to the interests of other heirs. For these reasons, the argument of the appealing defendants with regard to the interest of Russell Bumgarner, the interest of the incompetent, and the interest of all heirs collectively must fail. More will be said later in this opinion regarding these latter matters.

The second issue presented for review, as set forth above, concerns the rights and status of defendant, Russell Bumgarner. It is observed that at no time did he form any specific intention to sell his interest in the property, but on the contrary was actively engaged in attempting to purchase the interests of the other heirs. From what has been said heretofore, it is clear that at no time did any right to purchase Russell Bumgarner's 1/30th undivided interest in the property as an heir accrue to the plaintiff. The amended findings of fact, conclusions of law and decree so provide. Russell Bumgarner's 1/30th interest in the property is unaffected by the amended decree herein and in this there is no error.

The third issue presented for review concerns the rights and status of the incompetent heir in the property. It is to be noted that neither she nor her guardian is a party to this appeal. She was likewise one of the heirs to an undivided fractional interest in the property in question. She was an incompetent for whom a guardian had been appointed and her guardian had signed an agreement to sell her interest in the property to Russell Bumgarner, another heir, without securing the approval of the court in which the guardianship proceeding was then pending. Subsequently this agreement to sell

her interest to Russell Bumgarner was withdrawn. Upon oral argument of this appeal, it appeared that her interest in the property has been acquired by plaintiff for her proportionate share of the purchase price of $75,000 for all the property, and that this sale was approved by the court handling her guardianship. Under these circumstances the issue of her status and rights under the purchase provisions of the lease is now moot and no purpose would be served by such determination.

The fourth issue presented for review concerns the effect of withdrawal from escrow by some of their heirs of their prior written agreements to sell to Russell Bumgarner. It is argued that this shows a lack of mutuality of intention to sell among all the heirs at any given time, and that as a result no right of purchase ever vested in plaintiff. This entire argument is bottomed on the proposition that all heirs must form a specific intention to sell the property before a right to purchase vests in plaintiff. From what has been said heretofore it is apparent that this court has rejected this basic premise urged by the defendants appealing herein and as a result the entire argument in this respect must fail.

In addition to the issues presented for review, during oral argument on this appeal, plaintiff's counsel suggested that this court in reviewing an equity case has the power to correct certain errors in the trial court's findings, conclusions and decree peripheral to the main issues presented for review on this appeal. Counsel suggested that amended finding of fact No. 5 was inconsistent with amended conclusion of law No. 2, that the amended decree provided for conveyance of the property by the heirs before completion of probate proceedings and that no findings, conclusions or provisions of the decree were added concerning the share of the crops on the land covered by the lease for the years 1965, 1966 and 1967 as between the heirs of the lessor on the one hand and the plaintiff on the other. It appears to us that the trial court is in a better position to determine these matters than this court is and that none of these

matters were apparently brought to the attention of the trial court in any manner. Accordingly any application for relief in these particulars should be made to the trial court consistent with the views expressed in this opinion.

The decree of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.