Frederick J. PEET and Judith
S. Keen, Appellants,

v.

George RANDOLPH and Cecelia
Randolph, Respondents.

No. ED 77184.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 7, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 14, 2000.

Application for Transfer Denied
Jan. 23, 2001.

John G. Young, Jr., St. Louis, for appellants.

Frank K. Carlson, Union, for respondents.

LAWRENCE E. MOONEY, Judge.

The question we must decide is whether a real estate contract lacked such definiteness and finality that it was incapable of specific performance, thereby justifying summary judgment. Because we conclude the issue is fairly disputable, we reverse summary judgment and remand for a trial on the merits.

Frederick J. Peet (Peet), for himself and as assignee of co-plaintiff Judith S. Keen (Keen) (collectively referred to as Purchasers), appeals from summary judgment entered in favor of George Randolph (Mr. Randolph) and Cecelia Randolph (Mrs. Randolph) (collectively referred to as Sellers) in Purchasers' suit against Sellers for specific performance of a real estate sales contract. Purchasers argue that the trial court erred in granting summary judgment because: (1) Rule 74.04(c) was not followed; (2) there was a genuine issue of material fact concerning the realty in the real estate sale contract such that the identification of the realty to be conveyed was certain; and (3) the real estate sale contract did include all of the essential terms necessary to the parties' agreement on the right of first refusal and the fact that a document needed to be executed by the parties for recording purposes at the time of the closing was not fatal to a claim for specific performance.

### Facts

Purchasers and Sellers entered into a real estate sales contract involving Sellers' 140–acre farm in Franklin County. The petition asserts the contract included: (1) Exhibit A, the Residential Sale Contract dated May 23, 1996; (2) Exhibit B, the Supplemental Agreement to Contract dated May 23, 1996; (3) Exhibit C, an aerial photo with the 120–acre property outlined and the approximate boundaries for the 20–acre parcel; and (4) Seller's Disclosure Statement. Sellers planned to retain a 20–acre parcel adjoining their son's property.

The Residential Sale Contract described the property to be sold as follows:

"120 ± acres and All Improvements as per MLS Listing # 532264, 3547 Hwy EE, Beaufort, Mo. Legal to govern." The handwritten terms of the Supplemental Agreement included, inter alia:

 _Survey: Buyer acknowledges orig. tract is 140 ± A. Seller, with P & Z approval, is retaining no more than 20 A. Seller agrees to have corners of 20 A. tract marked at his expense. Excepting the prior mentioned 20 A tract, Buyer accepts the property lines as per existing plat.

 _Buyers to have first right of refusal to any offer on the above mentioned 20 A tract if said tract is ever sold, wholly or in part, written first right of refusal to be executed at the time of closing of this contract.

Purchasers agreed to buy from Sellers approximately 120 acres for $270,000. Purchasers were ready, willing, and able to close although Sellers failed to appear at closing. Mr. Randolph claimed he could prevent closing by neglecting his duty to have the property surveyed.

Purchasers filed suit seeking specific performance, and after substantial discovery on both sides, Sellers filed a motion for judgment on the pleadings against Peet and a motion to dismiss against Keen. In both motions, Sellers claimed the contract was not enforceable because (1) it fails to identify with sufficient particularity the realty to be conveyed; and (2) it is contingent upon the parties' future agreement on an instrument yet to come into existence, the right of first refusal. Purchasers filed a response including excerpted deposition testimony of Sellers' real estate agent.

Thereafter, the trial court conducted a hearing on the motions at which Sellers presented several evidentiary items. The evidence included Sellers' partial deposition testimony, Peet's partial deposition testimony, a 182–acre plat map of the farm, and the photo contained in Exhibit C. The court advised the parties that pursuant to Rule 55.27(b), it would consider

the Sellers' motions as motions for summary judgment and set a further briefing schedule.

After receiving briefs from both parties and additional evidence from Purchasers, the trial court entered summary judgment in favor of Seller. It found that "the purported contract on which Plaintiffs' suit is based fails to adequately describe the subject realty," and further that "the purported contract is dependent upon a document yet to come into evidence, as to the contents of which the parties have no agreement whatsoever." Peet filed "Separate Plaintiff Frederick J. Peet's Motion for Reconsideration and to Amend Judgment" with attached affidavits of Sellers' agent and a registered land surveyor. The motion was heard and denied by the court. This timely appeal follows.[1]

### Analysis

■ We review the trial court's grant of summary judgment in favor of Sellers *de novo. ITT Commercial Finance Corp., et al. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). To succeed on a motion for summary judgment, the movant must show there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *Id.* at 380. The record is viewed in the light most favorable to the non-movant, who is given the benefit of all reasonable inferences. *Id.* at 382. "Therefore, it is not the 'truth' of the facts upon which the court focuses, but whether those facts are disputed." *Id.* Because our disposition of Points II and III require a remand, we need not address Purchasers' claim on Point I that the trial court failed to follow proper summary-judgment procedure.

### I: Insufficient Description of Land

■ Purchasers allege the trial court erred when it determined that the real

estate contract failed to adequately describe the subject realty. To obtain specific performance, a contract must not be indefinite, uncertain, or incomplete. *Biggs v. Moll,* 463 S.W.2d 881, 887 (Mo. banc 1971). It must provide the essential terms and be enforceable without adding to its terms for a court will not make a contract for the parties. *Assemblies of God v. Hendricks,* 807 S.W.2d 141, 146 (Mo.App. S.D. 1991). A sufficient description of real property is one of the essential terms of a contract for the sale of real property. *Id.* However, "[t]he land does not need to be fully and actually described in the paper; but the writing must afford the means whereby the identification may be made perfect and certain through parol evidence." *Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268, 270 (1946).

■ Applying these principles to this case, we find a genuine issue of material fact exists as to whether the subject realty was adequately described. Sellers' and Buyers' agents and Peet testified that the contract included Exhibits A, B, and C and that the Sellers not only knew the lines on Exhibit C represented the retained 20–acre parcel, but also that Sellers participated in drawing those lines.

Sellers dispute that they had ever discussed where the 20–acre parcel would be located or that they had any part in drawing the lines on Exhibit C. Furthermore, Mr. Randolph stated he believed the "existing plat" referred to the 182–acre plat map that no one else had ever seen or even knew about. However, at another deposition, Mr. Randolph testified that at around the time of signing, he and a surveyor marked on an aerial map where the 20 acres would be located.

Viewing the record in the light most favorable to Purchasers, there is a genuine issue of material fact as to whether Exhib-

---

**1.** Sellers challenge appellate court jurisdiction and have filed a motion to dismiss the appeal, arguing that the judgment became final on September 19, 1999, since only one

of the Purchasers filed a post-judgment motion that would delay finality of judgment. The motion to dismiss is without merit and is denied.

it C was part of the contract and whether the lines on it provide a sufficient description of the real estate for specific performance.

## II: Right of First Refusal

Purchasers allege the trial court erred when it entered summary judgment for Sellers since the right-of-first-refusal clause was specific enough to enforce and the parties agreed on that clause. Purchasers argue the clause is enforceable because only a formality remained of executing a document for recordation and the real estate contract contained all the essential terms necessary to the parties' agreement on the right of first refusal. Furthermore, Purchasers dispute the trial court's finding that there was no meeting of the minds regarding the right of first refusal.

■ First, we address the issue of enforceability. Other jurisdictions have held clauses similar to the one in this case are specific enough to be enforced. *Winberg v. Cimfel*, 248 Neb. 71, 532 N.W.2d 35 (1995); *Briggs v. Sylvestri*, 49 Conn.App. 297, 714 A.2d 56 (1998). Right-of-first-refusal clauses are often stated in general terms because the right may be exercised at some remote time in the future. *Auerbach v. County of Hanover*, 252 Va. 410, 478 S.E.2d 100 (1996). Missing terms such as the price of the land or the duration of the right does not render the clause unenforceable. *Kellner v.. Bartman*, 250 Ill.App.3d 1030, 189 Ill.Dec. 639, 620 N.E.2d 607, 611–612 (1993). Moreover, in upholding a general right-of-first-refusal clause, the Supreme Court of Montana declared that the terms of the agreement would be sufficiently clear and enforceable "at such time as the owner forms a specific intention to sell the property for a definite price on definite terms." *Weintz v. Bumgarner*, 150 Mont. 306, 434 P.2d 712, 716 (1967). The Iowa Supreme Court also upheld a right of first refusal clause that did not state price or duration. *Myers v. Lovetinsky*, 189 N.W.2d 571, 574–575 (Iowa

1971). *See also Berry–Iverson Co. of North Dakota Inc. v. Johnson*, 242 N.W.2d 126, 131 (1976) (adopting the reasoning of both the Montana and Iowa Supreme Courts from *Weintz* and *Myers* ). Further, the statute of frauds does not defeat a right of first refusal stated in general language because the terms become definite when the owner fixes a price at which he is willing to sell. *Brenner v. Duncan*, 318 Mich. 1, 27 N.W.2d 320, 322 (1947). Here, although lacking specific terms as to price and duration, the clause may still be valid. The terms will become clear when Sellers have an offer from a third party that they are willing to accept.

■ Next, we look to determine if the parties had an agreement regarding the right of first refusal. In this case, the record shows that Peet believed the clause meant that Sellers would have to offer him the property if they chose to dispose of it in any way, including sale, devise, bequest, or gift. Sellers claim that because Peet's mistaken belief did not conform to the true nature of a right of first refusal, there was no meeting of the minds necessary for a binding contract.

■ Missouri, however, has applied the objective theory of contracts since 1892. *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo.App. E.D.1988); *Brewington v. Mesker*, 51 Mo.App. 348, 356 (1892). "The objective theory lays stress on the outward manifestation of assent made to the other party in contrast to the older idea that a contract was a true 'meeting of the minds.'" *Computer Network Ltd.*, 747 S.W.2d at 675. (citing J. Calamari and J. Perillo, *Contracts*, § 2–13, at 23 (2nd ed.1977)). It is presumed the parties' intent is expressed by the natural and ordinary meaning of the language in the contract. *Parker v. Pulitzer Pub. Co.*, 882 S.W.2d 245, 249 (Mo.App. E.D.1994). Disregarding either party's secret surmise or undisclosed assumption, the court must ascertain the parties' meaning and intent as

expressed in the language used and give effect to that intent. *Computer Network,* 747 S.W.2d at 675; *Needles v. Kansas City,* 371 S.W.2d 300 (Mo.1963).

Thus, Sellers' contention affords them no relief. The objective test demands that a court focus on the language of the agreement to determine the parties' intent. Here, the right of first refusal was to any offer "if said tract is ever sold, wholly or in part." By its unambiguous terms the right of first refusal applies to a future sale, but not to other possible transfers. Therefore, the court erred in entering summary judgment because the right of first refusal clause was specific enough to enforce, and under the objective theory of contracts, the parties agreed on the clause.

### III: The Statute of Frauds

■ The dissent interposes the Statute of Frauds in defense of the grant of summary judgment. Although the trial court did not rely upon the Statute of Frauds in its judgment, it is true that we will uphold summary judgment if it could have been properly granted on grounds other than those relied upon. *Chancellor Dev. Co. v. Brand,* 896 S.W.2d 672, 675 (Mo.App. E.D. 1995).

■ Again, in reviewing the grant of summary judgment, we must determine whether a genuine issue of material fact exists. *ITT Commercial Finance,* 854 S.W.2d at 382. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* If the movant submits inconsistent evidence on the material facts, the prima facie showing required for summary judgment is defeated. *Id.* In deciding whether a genuine issue of material fact exists, we are bound to view the record in the light most favorable to the party against whom judgment was entered. We also make all reasonable inferences from

the record in favor of the non-movant. *Id.,* at 376.

■ The Statute of Frauds exists to avoid fraud, not to facilitate it. A writing satisfies the Statute of Frauds memorandum requirement if it sets forth the essential terms of the contract. *In re Estate of Looney,* 975 S.W.2d 508, 515 (Mo.App. S.D.1998). A real estate sales contract must include: the parties, the subject matter, the consideration, the price, and promises on both sides. *Id.* When these essential terms are present in a real estate sales contract, the contract is specifically performable even if it is not perfectly drafted or somewhat vague. *Id.* If the substance of the agreement appears from the writing, the writing need not be an explicit or complete contract and the terms need not be definite. *Id.* Extrinsic evidence may be used to clarify the terms. *Id.* Moreover, the writing need not be a single document; rather, the agreement may be contained in separate writings that when taken together, satisfy the Statute of Frauds. *In re Estate of Looney,* 975 S.W.2d at 515. "The documents need only be connected either by express reference to one another or by clear implication established through their respective contents." *Id.*

The dissent accuses us, under the facts of our case, of allowing the standard of review in summary judgment to "trump" the Statute of Frauds. Indeed we are. It is the standard of review that must frame our assumptions and govern our consideration of issues on appeal. Under the universally accepted guidance of *ITT Commercial Finance, supra,* we must view all contradictory facts in favor of the non-movant and make all reasonable inferences in the non-movant's favor.

■ In applying the standard of review, we are faced with the following summary judgment facts:

1) Sellers and Purchasers signed a real estate sales contract.[2]

---

**2.** Exhibit A; George Randolph deposition pp. 43–44; Frederick Peet deposition p. 86.

2) On the same date, Sellers and Purchasers signed a supplemental agreement providing for the Seller's right to retain 20 acres; it provides, "Excepting the prior 20 A tract, Buyer accepts the property as per existing plat." [3]

3) A plat of the farm with 20 acres marked off was attached to the sales contract. [4]

4) The Sellers had previously participated in the demarcation of the 20 acres on the attachment. [5]

Here, the documents are not only "connected either by express reference or clear implication," but also they are physically attached! The dissent's characterization of Exhibit C, the plat attached to the sales contract, as a "separate document" is mistaken. A connection, even without the attachment present here, is sufficient to satisfy the statute of frauds. [6] Further, the dissent seeks to impugn the credibility and motives of Purchasers and the real estate agents despite the long-standing rule that, on a summary judgment motion, credibility is not for the trial or appellate court to decide. *Nolte v. Wittmaier,* 977 S.W.2d 52, 59–60 (Mo.App. E.D.1998). Our standard of review in summary judgment must frame our assumptions on appeal. The summary judgment facts provide the Sellers no escape from their contract obligations.

We reverse and remand for further proceedings consistent with this opinion.

**RICHARD B. TEITELMAN, P.J.,** dissents in separate dissenting opinion.

**AHRENS, J.,** concurs in opinion of Judge Mooney.

**3.** Exhibit B; George Randolph deposition pp. 43–44.

**4.** Exhibit C; Paul Pier deposition p. 93; Frederick Peet deposition p. 88.

**5.** Frederick Peet deposition pp. 106–107.

**6.** 10 SAMUEL WILLISTON, WILLISTON ON CONTRACTS § 29:30 (4th ed.1999). 4 CORBIN ON CONTRACTS § 23.3 (rev. ed.1997).

**RICHARD B. TEITELMAN,** Presiding Judge, dissenting.

I respectfully dissent. The primary issue before us is whether the contract contains a description of the land to be conveyed that is sufficient to satisfy the statute of frauds. As a matter of law, it plainly does not. Additionally, there was no meeting of the minds regarding the right-of-first refusal provision. The trial court was correct on both grounds on which summary judgment was granted, and the judgment should be affirmed.

## I.

Taking the latter point first, the summary judgment record is indisputably clear that the parties had no actual meeting of the minds regarding the scope and duration of the so-called "first right of refusal" referred to in the Supplemental Agreement to Contract (Exhibit B). Purchasers had in mind a scope and duration for the right of first refusal that would radically exceed the normal meaning of the term since, among other things, it would extend beyond the lifetime of the Sellers to include their heirs,[1] and would also prevent Sellers from conveying the property to anyone by gift. Sellers had no such thoughts in mind, but instead intended to keep the retained 20–acre portion of their farm in the family, and to immediately deed 10 acres of it to their daughter following any sale of the 120 acres. Purchasers candidly acknowledge this, but argue in response that the terms of the contract's right-of-first-refusal provision were "unambiguous" and hence cannot be varied or

**1.** Indeed, even still in this appeal, Purchasers have continued to insist that the right-of-first refusal provision would bind the Sellers *and their heirs.* They argue in their reply brief that the right would be triggered by *"a sale by the Randolphs or their heirs "* of any portion of the retained 20 acres. (emphasis added)

attacked through evidence showing the Purchasers' actual intent. Since the contract language is completely silent as to crucial terms such as price and duration of the right, however, the provision is ambiguous and the court properly looked to evidence of the parties' actual intent. Thus, because the summary judgment record leaves no doubt that the contract for sale of real estate was dependent on a future document——namely, the right of first refusal——as to which the parties had no actual agreement or meeting of the minds, the trial court was correct in holding that there was no completed contract capable of specific performance. See *P.R.T. Inv. Corp. v. Ranft*, 363 Mo. 522, 252 S.W.2d 315, 318 (1952).

## II.

Sellers' dispositive motions alleged that the contract's description of the subject realty was insufficient to satisfy the statute of frauds.[2] The statute of frauds states, in relevant part: "No action shall be brought ... upon any contract for the sale of lands ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith ...." Section 432.010 RSMo 1994. Whether such a writing is sufficient to satisfy the statute of frauds is

a question of law. *Ahrens v. Dodd*, 863 S.W.2d 611, 613 (Mo.App. E.D.1992). When the writing clearly is not sufficient, defendants in an action seeking to enforce the alleged contract are entitled to summary judgment. *Arnold v. Broadmoor Development Co.*, 585 S.W.2d 564, 565, 9 A.L.R.4th 1002 (Mo.App. E.D.1979); *Smith v. International Paper Co.*, 87 F.3d 245, 247 (8th Cir.1996) (applying Missouri law); *Gagne v. Stevens*, 696 A.2d 411, 414 (Me.1997); *Booth v. Flanagan*, 23 Conn. App. 579, 583 A.2d 148, 151 (1990).

The statute of frauds was designed to avoid "the dangers which developed in permitting title to real estate and contracts as to other weighty matters to rest in parol." *Tuckwiller v. Tuckwiller*, 413 S.W.2d 274, 278 (Mo.1967). To satisfy the statute of frauds, a writing must set forth "the essential terms of the contract." *Ahrens v. Dodd*, 863 S.W.2d at 613. The "essential terms" of a contract for the sale of real property are the parties, the subject matter, the price, the consideration, and the promises upon both sides. *Ray v. Wooster*, 270 S.W.2d 743, 752 (Mo.19524). The subject matter (i.e., the property to be conveyed) is the most "essential part" of a contract for the sale of realty. *Huttig v. Brennan*, 328 Mo. 471, 41 S.W.2d 1054, 1062 (1931). Thus, it is black-letter law that the writing must describe the land

**2.** The motions also alleged that the land's description was insufficiently definite and certain to support specific performance. The issue of sufficient definiteness and certainty necessary to support specific performance is very closely related to, though not identical with, that of the sufficiency required to satisfy the statute of frauds. See *Granato v. Bravo*, 498 S.W.2d 499, 503 (Tex.Civ.App.1973). In Missouri, the substantive criteria governing the two are virtually indistinguishable, since the cases analyzing the question solely in terms of the sufficiency needed to support specific performance all are based on precedents and reasoning that ultimately trace back to the statute of frauds cases. See, e.g. *Herzog v. Ross*, 355 Mo. 406, 196 S.W.2d 268 (banc 1946), based on *Keator v. Helfenstein Realty Co.*, 231 Mo. 676, 132 S.W. 1114 (1910). *Keator*, in turn, was based on the rule announced in *Black v. Crowther*, 74 Mo.App.

480 (1898)——which was purely a statute of frauds case, in which the plaintiff claiming breach of contract sued only for damages and not specific performance. Further, the fundamental reason we allow a buyer of real property the extraordinary remedy of specific performance, even though a legal remedy would otherwise be adequate, is because American law has traditionally regarded an interest in a particular tract of land as unique. See *Wilkinson v. Vaughn*, 419 S.W.2d 1, 5 (Mo.1967). It is only fair and just, therefore, that in order to warrant specific performance of a contract for the sale of real estate, the essential terms of the contract, including *especially* the description of the land to be conveyed, should be "so precise and exact that neither party could reasonably misunderstand them." *Blake v. Shower*, 207 S.W.2d 775, 779 (Mo. App.1948). The land description in the case at bar fails to meet that test.

sold. 72 Am Jur 2d, *Statute of Frauds*, § 322, p. 840 (1974). As to adequacy of the description, the well-settled general rule is that: "The land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper. But the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." *Black v. Crowther*, 74 Mo.App. 480, 483 (1898). See also *Herzog v. Ross*, 355 Mo. 406, 196 S.W.2d 268, 270 (banc 1946). "The writing must be a guide to find the land, and must contain sufficient particulars to point out and distinguish the tract from any other." *Fox v. Courtney*, 111 Mo. 147, 20 S.W. 20, 21 (1892).

Thus, a court will not enforce a contract for the sale of real estate unless the contract or a written memorandum thereof either definitely describes the land or clearly furnishes, *within itself*, the "means" or "key" by which the property can be identified with reasonable certainty. *Macy v. Day*, 346 S.W.2d 555, 559 (Mo. App.1961); *Gagne v. Stevens*, 696 A.2d at 414; 72 Am Jur 2d, *Statute of Frauds*, § 323; see also generally, Annotation: *Sufficiency of Description or Designation of Land in Contract or Memorandum of Sale, Under Statute of Frauds*, 23 A.L.R.2d 6, § 2 (1952 and Later Case Service). As our Supreme Court has stated:

> The law does not require that a contract for the sale of land shall in itself be wholly sufficient to identify the property. The writing is sufficient if it clearly reveals the intent of the parties with reference to the particular tract which is the subject matter of the sale and furnishes the means of its identification; or, as some cases hold, if it provides the "key" to the identification——the applicable principle being that that is certain which can be made certain.

*Ray v. Wooster*, 270 S.W.2d at 749. As the court in *Wooster* further noted, the

"key" or "means" contained in the writing must be a reference "to external standards in existence at the time and capable of being determined *beyond dispute.*" *Id.* (emphasis added) See also *Rone v. Reeves*, 20 S.W.3d 526, 529 (Mo.App. S.D.2000) (affirming trial court ruling that contract was not legally enforceable under the statute of frauds because "[t]he contract on its face neither sufficiently provides the means for determining ... the land to be conveyed nor on its face refers to then-existing external evidence which might be utilized in determining the parties' intentions and applying the description contained within the contract.")

A necessary corollary to the "key or means" rule is that parol evidence is only admissible to *apply*, not to *supply*, a description of land in a contract. *Shy v. Lewis*, 321 Mo. 688, 12 S.W.2d 719, 721 (1928).[3] The description in the contract "must be sufficiently definite to identify the land by its own terms or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute." *Id.* If an insufficient description is given, "oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land and then to apply the description." *Id.*

Applying these principles to the case at hand, the alleged contract fails to satisfy the statute of frauds, in that it does not clearly contain, within itself, a "means or key" by which the subject realty can be determined with reasonable certainty beyond dispute. Rather, this is a situation where not only does the contract fail to specifically describe the property with definiteness and certainty, but it is vigorously disputed whether the alleged "means or key"——Exhibit C, the *unsigned* aerial photograph with yellow line markings on it, drawn at some uncertain time by some

---

**3.** *Shy v. Lewis* was cited with approval by the Supreme Court in *Ray v. Wooster*, 270 S.W.2d at 749.

uncertain person——was ever agreed to by the parties or intended to be part of the contract. What is left, is a question of credibility between opposing parties based purely on parol evidence. Purchasers (supported by the two real estate agents, who have a vested interest) maintain that it was explained to Mr. Randolph, and understood by him at the time of signing the contract, that the aerial photograph was the so-called "existing plat" referred to in Exhibit B, and that the yellow lines thereon were intended to mark the 120 acres to be sold and the 20 acres reserved. Mr. Randolph, on the other hand, says he never understood or agreed that the yellow lines marked the 120 acres to be conveyed; honestly believed at the time of signing the contract that he was free to choose which 20 acres (out of the total of 140 acres of his farm) he would keep; and was never even *presented with* Exhibit C with the yellow lines on it until sometime *after* he had signed the contract, at which time he specifically told the agent he did not agree to those lines.

None of this conflicting testimony is enough to preclude Sellers' entitlement to summary judgment. Exactly the opposite is true. To allow a trial on this record would fly in the face of the statute of frauds. It would directly contravene the principle that parol evidence is only admissible to apply, not to supply, a description of land in a contract, *Shy v. Lewis,* 12 S.W.2d at 721, and that parol evidence will not be admitted to complete an insufficient description of lands in a contract or to show the intention with which such a description was made. *Id.* "Parol evidence cannot be admitted to supply the defects" in such a case, "for this [would be] to do the very thing prohibited by the statute." *Reigart v. Manufacturers' Coal and Coke Co.,* 217 Mo. 142, 117 S.W. 61, 64 (1908). Nor does the fact that Sellers did not perform a survey to mark the 20 acres they were to retain operate to cure an otherwise fatally inadequate description of the property to be conveyed. See *McMichael Realty & Insurance Agency, Inc. v.*

*Tysinger,* 155 Ga.App. 131, 270 S.E.2d 88, 89 (1980). The attempted contract here effectively states nothing more than that Sellers were to convey 120 acres of the 140 acres they owned to Purchasers, retaining 20 acres for themselves. There is no specification of which 120 acres were to be sold and which 20 to be kept.

The majority opinion suggests that summary judgment is inappropriate because, viewing the record in the light most favorable to Purchasers, "there was a genuine issue of material fact as to whether Exhibit C was part of the contract." I respectfully disagree. There *is* a factual dispute as to whether Exhibit C was part of the contract. The majority's view, however, is premised on the false assumption that the standard of review under summary judgment somehow trumps the governing principles of substantive law concerning the statute of frauds. It doesn't. Instead, and precisely because of those principles, this is the rare case where it is the very *existence* of a factual dispute, resting as it does in parol, which entitles one party to judgment as a matter of law. Exhibit C is a separate document; it is not signed or initialed by anyone; it is not dated; there is no reference in either Exhibits A or B to what is meant by "existing plat;" Exhibit C does not on its face call itself a "plat;" nor does Exhibit C contain any handwritten notations on it such as "these are the property lines." There is simply *nothing in writing*——in any part of the contract, or in Exhibit C itself——which in any way indicates that Exhibit C is part of the contract.

The majority thus overlooks the fact that not only is Exhibit C unsigned, but there is no internal evidence of its identity and unity with the other two documents. The only conceivable way to cure this fatal defect in the contract's description of the property to be conveyed, would be to improperly allow parol evidence, that is, Exhibit C as part of the contract. **This is precisely what the statute of frauds for-**

**bids.** For although the writing required to satisfy the statute need not be contained in a single document, *Wheeler v. Blanton,* 253 S.W.2d 497, 499 (Mo.App.1952), nevertheless, when separate documents are relied upon to establish the existence of a written agreement that complies with the statute of frauds, they must be plainly connected by either "express reference to one another or by clear implication established through their respective contents." *In Re Estate of Looney,* 975 S.W.2d 508, 515 (Mo.App. S.D.1998); *Sales Service, Inc. v. Daewoo International (America) Corp.,* 770 S.W.2d 453, 456 (Mo.App. E.D. 1989); see also *Peycke v. Ahrens,* 98 Mo. App. 456, 72 S.W. 151, 151–152 (1903). Where an essential term is allegedly provided by an unsigned document, "the signature of the party to be charged may be found in a separate writing, *provided that one document expressly or explicitly incorporates the other by reference.*" (emphasis added) *Arnold v. Broadmoor Development Co.,* 585 S.W.2d 564, 566 (Mo.App. E.D. 1979). This is because "the fact that two or more writings constitute part of an entire agreement may not be shown by parol in so far as satisfying the statute of frauds is concerned." *Frostwood Drugs, Inc. v. Fischer & Frichtel Const. Co.,* 352 S.W.2d 694, 698 (Mo.1961).[4] This has been the law in Missouri for virtually all of our history. As was stated more than a century ago:

> Of course, the memorandum of a contract which satisfies the Statute of Frauds is an instrument essentially informal and imperfect .... It must, however, contain such words as will enable the court, without danger of mistake, to declare the meaning of the parties. It must obviate the necessity of going to oral testimony, and relying on treacherous memory as to what the contract

itself was. Where a sufficient description is given of the land sold, for instance, oral testimony may be resorted to, to fit the description to the thing; but where an insufficient description is given, or where there is no description, no such testimony is available or admissible. Every agreement required by the statute to be in writing must be certain in itself, or capable of being made so by a reference in the contract itself, or to something else whereby the terms may be ascertained with reasonable precision; *and if it is claimed that the contract is contained in several papers, one referring to the other, oral testimony cannot be introduced to ascertain what paper is referred to; this must appear from the face of the document itself.*

(emphasis added) *Scarritt v. St. John's M.E. Church,* 7 Mo.App. 174, 178 (Mo.App. 1879); (also cited with approval in *Deulen v. Wilkinson,* 473 S.W.2d 357, 362 (Mo. 1971)).

The above-quoted passage from *Scarritt* was a good, eloquent and correct statement of the law when it was made one hundred and twenty-two years ago; it remains a good, eloquent and correct statement of the law today—and one that directly applies to the case at hand. In deciding this case, we should not ignore the longstanding legal history, tradition and body of judicial precedent behind the statute of frauds. Because it is clear that as a matter of law the land description contained in the alleged contract here does not satisfy the statute, the trial court's grant of summary judgment was proper and should be affirmed.

---

4. See 72 Am Jur 2d *Statute of Frauds,* § 375, pp. 903–904 (an obscure reference in a signed writing "to some other unspecified document" is insufficient to permit use of parol evidence to identify the thing referred to or relate it to the signed document). Obviously, in the case at bar the term "existing plat" as used in Exhibit B is no more than a mere reference to some other unspecified document. See also generally, Annotation: *Admissibility of Parol Evidence to Connect Signed and Unsigned Documents Relied Upon as Memorandum to Satisfy Statute of Frauds,* 81 A.L.R.2d 991 (1961 and Later Case Service).