**Leo F. DEULEN and Walter Toben, Respondents,**

v.

**William J. WILKINSON et al., Appellants.**

No. 55509.

Supreme Court of Missouri, Division No. 1.

Dec. 13, 1971.

Hamra, Gibson & Taylor, Sam F. Hamra, Jr., Don H. Gibson, Springfield, for respondents.

William A. Moon, Springfield, for appellants.

HIGGINS, Commissioner.

Action for reformation and for specific performance, as reformed, of contract for sale of real estate.

Plaintiffs by Count I alleged: That defendants Wilkinson are the record owners of "All of the East Half (½) of the Northeast Quarter (NE ¼) of Section Twenty-two (22) Township Twenty-eight (28), Range Twenty-three (23) in Greene County, Missouri, together with all improvements thereon"; that defendants Swan are beneficiaries, and defendant

Lowther is trustee in a deed of trust on said real estate; that on or about January 2, 1969, plaintiffs and the Wilkinsons entered into a written contract whereby the Wilkinsons, in consideration of an agreed purchase price, promised and agreed to sell said land; that the contract description was not complete but that the parties mutually intended it to be the same as above stated; that to reflect the parties' intention, the contract should be amended and reformed to read as above stated; that the incomplete description was occasioned by mutual mistake of the parties and by mistake of the scrivener. Plaintiffs accordingly prayed reformation of the contract.

By Count II, plaintiffs adopted the foregoing allegations and alleged further: That on or about February 15, 1969, they were informed in writing and orally that the Wilkinsons would not honor their agreement and contract; that notwithstanding such anticipatory breach by the Wilkinsons, plaintiffs stood ready, willing, and able to perform. Plaintiffs accordingly prayed specific performance of the contract if and as reformed pursuant to the prayer of Count I.

Wilkinsons' answer to Count I was a general denial with further allegations that any offer, discussion and acceptance of sale between the parties was on condition the real estate agent involved find another place for Wilkinsons; that the purported contract contravened the statute of frauds. Wilkinsons accordingly prayed denial of plaintiffs' Count I and, in the alternative, that if reformation be decreed, such reformation include also the alleged condition.

The answer to Count II was also a general denial with further allegations that the purported contract was not susceptible of specific performance due to its contravention of the statute of frauds; that if reformed to include the condition as well as plaintiffs' allegations of correction, they stood ready, willing, and able to perform. Wilkinsons accordingly prayed for denial of specific performance unless the court

reformed the contract to include their condition and, as thus reformed, to decree specific performance.

The court found all issues for plaintiffs, and decreed reformation and correction of the contract as prayed by plaintiffs and, as reformed, decreed specific performance of the contract as prayed by plaintiffs.

The evidence warrants the following statement of fact.

Kenneth R. Funkhouser, commonly known as Casey Funkhouser, was a real estate salesman with the Lawson-Weaver Real Estate firm in Springfield, Greene County, Missouri. He had known plaintiffs and the Wilkinsons for some time prior to March, 1968. About the 19th or 20th of March, 1968, Bill Wilkinson called him at his office and told him he would like to sell his farm. He was familiar with the farm, which consisted of 80 acres. The initial listing was of one 40 acres and improvements. He went to the farm just west of Springfield the next day, taking with him Jim Akridge, Fred Scarborough, Ken Butrick, and Hugh Ware, also real estate salesmen with Lawson-Weaver. While at the farm they took measurements of the house, as well as to note other identifying features of the property and to drive around the entire property. Both Mr. and Mrs. Wilkinson were present. The Wilkinsons wanted $42,500 for the 40 acres and improvements. The listing gave an exclusive right to sell for six months to Lawson-Weaver of the 40 acres owned by Wilkinsons. At a later date, and after several calls inquiring about the entire 80 acres, Mr. Funkhouser spoke to Mr. Wilkinson and obtained a price of $65,000 for the entire 80-acre farm, which included "milkers." The six-months' exclusive sale right expired in due time, but Mr. Funkhouser continued to receive calls and continued attempts to sell the farm in part or in whole. He showed the farm several times, some when one or both of the Wilkinsons were present.

Around December 20, 1968, Mr. Funkhouser took Mr. Deulen and Mr. and Mrs. Toben out to the farm. Both Wilkinsons were present. They inspected the farm and house, and inquired about hay crops and dairy facilities. After leaving plaintiffs authorized Mr. Funkhouser to offer $60,000 for the 80 acres and equipment. The offer was relayed to the Wilkinsons and they refused it. On the following day plaintiffs offered through Mr. Funkhouser to "split the difference" between $60,000 and Wilkinsons' $65,000 asking price. This offer, too, was rejected, but the Wilkinsons were agreeable to a $60,000 offer for the 80 acres without equipment. Mr. Funkhouser, acting as go-between, relayed the offers, rejections, and counteroffers between the parties; and, on January 2, 1969, plaintiffs, the Wilkinsons, and Mr. Funkhouser assembled in the barn on the 80 acres to discuss the various propositions. During the negotiations Mr. Funkhouser accompanied the Wilkinsons to their kitchen to discuss the sale and, in the course of such discussion, Mr. Funkhouser agreed to cut his commission so that the Wilkinsons would net $57,000 in the event they agreed to sell for $60,000. They went back to the barn and an agreement was reached whereby Wilkinsons would sell their farm, including attached improvements, for $60,000 with possession to be given March 31, 1969. In the course of reducing the agreement to writing, Mr. Funkhouser stated he did not have the legal description. Everyone was cold and in a hurry and agreed to his supplying the legal description in lieu of "80 acres more or less & all attached improvements thereon." This was satisfactory to all parties and the following contract was then executed by all parties:

"CONTRACT FOR THE SALE OF REAL ESTATE

"THIS CONTRACT, made and entered into this 2nd day of January, 1969, by and between William J. Wilkinson & Wilma J. Wilkinson of Republic, Mo. hereinafter known as 'Seller', and Walter William To-

ben & Leo F. Deulen of Spfg hereinafter known as 'Buyer', WITNESSETH:

"The Seller agrees to sell and the Buyer agrees to buy, upon the terms and conditions herein set out, the following described property: 80 acres more or less & all attached improvements there-on

"Together with the following personal property now on said premises: The following items will be left in Dairy farm— Hot water heater & three Stantions [sic].

"The price to be paid by the Buyer therefor is $60,000, payable as follows: $5000.00 in cash upon the signing of this contract to Lawson Weaver and Associates, agents for the Seller, to be held in escrow by said Lawson Weaver and Associates until this transaction is finally closed, the balance to be paid as follows: $10,000 more in cash at closing & balance to be financed. Cash to seller at closing.

" * * * Closing shall transpire March 31, 1969, at the offices of Lawson Weaver Co. unless additional time is necessary to cure defects in title. Time shall be of the essence of this contract. * * * '

"Absolute and unqualified possession of the above property shall be delivered to the Buyer on closing, together with the keys to the premises * * *."

Mr. Funkhouser was to supply the exact legal description when he returned to his office, but mistakenly failed to do so.

Mr. Wilkinson asked Mr. Funkhouser to assist him to find a new place. They looked at two places but neither proved satisfactory. The Wilkinsons never asked that finding a new place for them be made a stipulation or condition of the sale of the 80 acres.

Plaintiffs placed $5,000 in escrow with Mr. Funkhouser, covering the down payment on the purchase price and, at trial time, that sum was still in escrow. On the closing date, March 31, 1969, plaintiffs were present with an additional $10,000 by way of a cashier's check and a $45,000 loan commitment on 80 acres in Greene County, "known as the Bill Wilkinson farm," from the First City Bank of Springfield. Mr. Funkhouser had prepared the documents necessary to closing the sale, and when the Wilkinsons failed to show, Mr. Weaver wrote to them stating the buyers' readiness to close the sale.

With respect to expiration of the original listing, Mr. Funkhouser was aware that his exclusive right to commission expired six months after the original listing. However, the property was never removed by the Wilkinsons from its listing and he considered it on open listing so that if he sold it by agreement he would still get his commission. He would not have taken plaintiffs to the farm contrary to the Wilkinsons' wishes.

Mr. Funkhouser did not write anything into the contract with respect to finding Wilkinsons a new place because he did not consider such as a condition and they did not tell him to so condition the contract.

The only farm mentioned for sale between Wilkinsons and the Lawson-Weaver people was the 80-acre farm owned by Wilkinsons west of Springfield, which was first listed as 40 acres with improvements and ultimately as an entire 80 acres and improvements if the sellers could be satisfied on price. None of the Lawson-Weaver people ever exerted any pressure on the Wilkinsons with respect to the listing.

Plaintiffs first contacted Mr. Funkhouser with respect to purchasing a farm in December, 1968. He had a farm in Christian County advertised in the paper and was asked if he had any others. This led to their first knowledge of the Wilkinson place in Greene County. Mr. and Mrs. Deulen drove around the farm about the 26th or 27th of December, 1968, and they,

together with Mr. and Mrs. Toben and Orville Deulen, went on the farm about December 29, 1968. They called Mr. Funkhouser and he arranged to meet them there. Both Wilkinsons were at home and they showed the house, grounds, and buildings. No other property was in question; the only farm involved was the 80 acres on which all parties were then standing. The ultimate offer for purchase of the farm was accepted January 2, 1969, during which time the parties met at the farm to negotiate contract details and to execute the contract. There was no doubt that only one 80-acre farm was involved and there were no contingencies to be written into the contract; only the exact legal description was to be later supplied.

After execution of the contract, and around mid-January, 1969, Leo Deulen obtained permission from Wilkinsons to fertilize and seed some of the land. Mrs. Wilkinson furnished him with data from a soil test and he made arrangements for fertilizing two fields. During this same period plaintiffs visited the farm and were told by Wilkinsons that they wished they had not sold and Wilkinsons inquired if plaintiffs would lease the farm back to them for four years. It was not until after February 14, 1969, upon receipt of a letter from Wilkinsons' lawyer that they were aware the Wilkinsons were going to rue bargain. Mr. Wilkinson verified the import of the letter and plaintiffs prepared to close the transaction.

Leo Deulen obtained the correct legal description from the abstract in possession of Wilkinsons' mortgagees, which description is the same as that stated in plaintiffs' petition.

The Wilkinsons owned but one 80-acre farm, same being the dairy farm in Greene County, Missouri, upon which they lived, with address of Route 2, Republic, Missouri, which was shown to plaintiffs by Casey Funkhouser with Wilkinsons present, and upon which the contract for sale was drawn and executed.

Wilkinsons were satisfied with the contract price but were unwilling to complete the sale because they had not found any place they wished to go. In all negotiations and contract preparation Casey Funkhouser was acting as the agent for all parties.

Mr. Wilkinson was a good businessman, having operated grocery stores successfully as well as to farm, and at trial was himself in the real estate business.

As appellants, the Wilkinsons contend the court erred in reforming the contract "as such contract was voidable under the statute of frauds * * * as there was no legal description of any kind or any description from which a legal description or location could in any way be determined in the contract. The Court supplied a new contract and did not reform the contract in controversy." Coupled with this assertion is the further contention that the alleged contract is not susceptible of specific performance "because of a complete lack of description" and contravenes the statute of frauds.

Appellants' argument is that there is no designation of state, county, township, range, or reference from which a complete description could be obtained, and therefore the court created a contract in place of reforming a contract.

Secondly, they argue that without a contract subject to reformation the court could not decree specific performance.

Accordingly, the decisive question is whether the writings construed with other evidence sufficiently describe and identify the real estate in question to satisfy the statute of frauds and thus give life and form to a contract so that it may be reformed and, as reformed, ordered performed.

Contrary to appellants' argument, a description deficient in respects similar to those noted by appellants is not fatally de-

fective under the statute of frauds if the available writings are a guide to external matters from which the property can be identified with certainty. As stated in Ray v. Wooster, Mo., 270 S.W.2d 743, 750[4], " * * * such omission is not fatal, under the statute, if the location in any manner otherwise appears from the writing, or, if the property can be identified with reasonable certainty with the aid of the data supplied by the instruments and a consideration of the attending circumstances." See also Scarritt v. St. John's M. E. Church, 7 Mo.App. 174, 178; Fox v. Courtney, 111 Mo. 147, 20 S.W. 20, 21; Weil v. Willard, 55 Mo.App. 376, 378; Anderson v. Hall, Mo., 188 S.W. 79, 81[1]; St. Louis 221 Club v. Melbourne Hotel Corp., Mo.App., 227 S.W.2d 764, 768[4].

The written contract in evidence described the property in question as "80 acres more or less and all improvements." The Wilkinsons, named as sellers and, inferentially, owners, were shown as residing at Republic, Missouri, which is in Greene County, and they lived on subject farm. The contract further noted the presence of a dairy barn and dairy equipment, showing the contract to relate to a dairy farm. Admittedly, the Wilkinsons owned no real estate other than subject 80-acre dairy farm in Greene County, Missouri, and the contract was executed with all parties present on subject farm at the time of execution and agreeing that the exact legal description could be supplied later by the real estate agent. There is no dispute with respect to price and it and mode of payment are shown by the contract. These factors were sufficient to enable plaintiffs to ascertain the exact description from Wilkinsons' abstract of title in possession of their mortgagee.

■ So, given the vendors' names, county of location, exact acreage, type of farm, all ascertainable from the face of the written sales contract, there is no problem under the surrounding circumstances in fur-

ther identifying such property with certainty sufficient to satisfy the statute of frauds for purposes of reformation of subject contract. And since the contract was properly reformed, the court also properly decreed specific performance of the contract as reformed.

Appellants' citations are not in point. In Allen .v. Kitchen, 16 Idaho 133, 100 P. 1052, the contract not only failed to show location by city, town, county, or state, it did not show where executed or seller's residence, and there was an absence of reference to any external matter from which identification of the property could· be made; in King v. Wood, 7 Mo. 389, the amount of land to be included in the contract was in dispute; in Weil v. Willard, supra, the contract was so indefinite that its location by state could not be determined; in Fox v. Courtney, supra, the seller had other property subject to confusion with that sought to be found from the conveyance; in Ringer v. Holtzclaw, 112 Mo. 519, 20 S.W. 800, the written agreement referred only in a vague way to another agreement about the price of property; in Macy v. Day, Mo.App., 346 S.W.2d 555, there was no record from which to ascertain whether the contract description of "Vo's bldg" could be further identified and recognized for contract purposes; in Jose v. Aufderheide, ·222 Mo.App. 524, 293 S.W. 476, the description did not show the amount of property to be conveyed.

Finally, appellants contend and argue that if the court "had the right to make a contract of which defendants deny," the court should have expressed "the true meaning and intent of the parties" and "not only have put in a description * * * but also all the other terms that were left out, such as the agreement with reference to the milking equipment and tanks and the other apparatus, and the other terms including finding appellants a farm as part of the deal."

The description of the real estate specified "80 acres * * * and all attached improvements." .The evidence showed Wilkinsons to own dairy apparatus including milkers, pipe, bulk tank, and refrigeration unit. The milkers attached to the cow and took milk through the pipe to the storage tank. The pipe and tank were not shown to be permanently affixed to the realty and were characterized as "removable." The contract excepted all personalty and without any record to show the milking apparatus to be anything but personalty, it was not a subject for reformation.

■ With respect to the purported condition of finding another farm for the Wilkinsons, there was no evidence that such was to be a term in the contract and there is nothing in the contract by which to infer such a term. There is no record to show that plaintiffs were made aware of any such condition. Mr. Funkhouser admitted his expressed desire to help Wilkinsons find a suitable replacement farm but denied any representation that such would be a term in the contract; and both Wilkinsons admitted they did not ask or direct Mr. Funkhouser to insert such term in the contract.

Accordingly, for the same reason that the court properly reformed the contract as prayed by plaintiffs, the court also properly denied insertion of other terms and conditions as prayed by the Wilkinsons.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.