Earl DUNNING and Peggy Dunning,
Plaintiffs-Respondents,

v.

ALFRED H. MAYER COMPANY, a corporation, Defendant-Appellant.

No. 34263.

Missouri Court of Appeals,
St. Louis District.

May 23, 1972.

424

Dempsey & Dempsey, Richard B. Dempsey, St. Louis, for defendant-appellant.

London & Greenberg, Burton M. Greenberg, Lawrence J. Fleming, St. Louis, for plaintiffs-respondents.

SIMEONE, Judge.

This is an appeal from a judgment in favor of Earl and Peggy Dunning, plaintiffs-respondents (hereinafter Dunnings) against Alfred H. Mayer Co., defendant-appellant (hereinafter Mayer) for $13,900 damages for a breach of contract to convey certain real property and to construct a residence.

On June 22, 1967, the parties entered into a written agreement whereby Mayer agreed to sell a certain lot in Wedgewood Green subdivision in St. Louis County and to erect

thereon a dwelling according to certain specifications, and the Dunnings agreed to pay $23,525 for the purchase of the land and the erection of the dwelling. Dunnings paid to Mayer the sum of $1,500 as a part of the purchase price. The "sale contract" provided that " . . . [I]n the event the dwelling being or to be erected on the property sold hereunder is not completed to Seller's (sic) satisfaction within seven (7) months and Purchaser gives Seller written notice of his desire to withdraw from this agreement, this instrument shall be deemed cancelled . . . "

Mayer did not construct the dwelling and on November 30, 1967, Dunnings filed a petition for Specific Performance, which was amended on July 2, 1968. The amended petition entitled "Amended Petition for Specific Performance, or In the Alternative, Breach of Contract," contained two counts. Count I prayed for a decree that "Defendant be directed to comply fully with the terms of the aforesaid contract, to construct the dwelling aforesaid, and to convey . . . said premises to the Plaintiffs, . . . and for such other and further relief, including costs, as to the Court may seem just and proper." Count II prayed damages in the sum of $10,000 for breach of the agreement. Count II also prayed damages for rent since December of 1967, increased construction costs in the sum of $3,000 and increased interest costs on a loan, which would approximate $2,000 over and above the cost factor pertaining to interest available at the time of the execution of the agreement.

On March 29, 1971, the cause was heard in the Circuit Court of St. Louis County. The pertinent evidence for the purposes of this appeal on behalf of the plaintiffs indicated that the Dunnings first contacted Mayer in 1966 and that in 1967 they entered into a sale contract with Mayer and gave Mayer two checks in June, 1967, one in the amount of $100.00 and the other in the sum of $1,400.00 representing an earnest money deposit. The Dunnings were interested in this particular piece of

property and the dwelling to be constructed because they were expecting a child and this piece of property was level, on a dead-end street, and abutted a public park. By the terms of the contract, Mayer was to complete the dwelling within seven months following the date of the contract. The Equitable Life Assurance Society of the U. S. (hereinafter Equitable) made a loan commitment in writing on July 10, 1967, to the Dunnings to finance the purchase of the lot and dwelling in the amount of $17,600 for a term of thirty years. This commitment which was made in June of 1967 expired on January 16, 1968, after being extended from December 16, 1967. The evidence concerning the loan commitment was specifically objected to by counsel for Mayer.

In August or September, 1967, Mr. Dunning contacted Mayer to "find out as to how the building was progressing"; and he was told by a representative of Mayer that "Well, there is a chance they won't build on that property; we might use that for other purposes, such as small shops or something like this." Mr. Dunning asked whether "you arbitrarily cancel out and I said what chances do I have, and he said, 'If you are lucky they might build in '68 or '69,' something to that effect . . " Thereafter Mr. Dunning inspected two additional lots but he rejected them as inferior to the lot he had originally selected. On cross-examination, Mr. Dunning stated that he was not "definitely advised by a representative of the Mayer Company that a house would not be constructed on the lot . . . " Mrs. Dunning, on cross-examination, said she knew that in August or September, 1967, that there would not be a house built on the lot.

There was a great deal of testimony concerning the loan commitment of Equitable. Objection was made to the entire evidence dealing with the loan commitment as not tending to prove any issue of damages. The objections were overruled. The special agent for Equitable testified that the amount of the loan commitment was in

the amount of $17,600 for a period of thirty years at the rate of six per cent interest. Equitable agreed to "accept the loan upon the conditions set forth here with completion date of the improvement to be on or before the 16th day of December '67." The loan commitment was extended to January 16, 1968, at which time it expired. The thrust of this evidence was to show that if the plaintiffs were to enter into a contract to build the home on a similar piece of land that the money could not be borrowed at six per cent and that the difference in interest rates should be included as an element of damage. The testimony showed that the interest rates had increased so that over a total period of thirty years the total difference between a loan of $17,600 at six per cent and the same loan at seven and one-half per cent for the same period would be $6,336.

The loan commitment was given with the express understanding and condition that the construction be started within three months, from July, 1967. When the loan commitment expired, Equitable charged no fee or penalty to the Dunnings for not utilizing the loan. The agent for Equitable indicated that Mr. Dunning related to him that "they [Dunnings] were having difficulty in seeing whether the house was going to be completed or not . . ." He admitted that sometime in December, Mr. Dunning advised him that definitely the house would not be constructed.

An appraiser for the plaintiff testified that using the "cost-approach" method of appraisal, it would require an expenditure of $28,600 to construct the house, and using the "market-data" approach he concluded that the value in 1971 would be $28,000.

The evidence shows that for the year 1968, the value of the property and dwelling was $25,200; in 1969 the value was $26,800; in 1970 the value was approximately the same as in 1971. On cross-examination, the appraiser testified that the sale price of $23,525 was a fair price in June, 1967, and in December, 1967 or January, 1968 there would have been an increase in value of $1,250.

The appraiser for Mayer placed the value of the house and lot in January, 1968 at $23,750. On cross-examination the defendant's appraiser stated that construction costs had risen "twenty-eight to twenty-nine percent" since 1967 and that interest rates had risen from six per cent to "seven and three-quarters."

On April 29, 1971, Findings of Fact and Conclusions of Law were filed by the court, pursuant to Rule 73.01(b).[1] The court found the plaintiffs paid to the defendant the sum of $1,500 as an advance partial payment; that the plaintiffs obtained a loan commitment from Equitable for a loan of $16,700 [$17,600–?] at six per cent, that the defendant "did not intend to carry out the terms of the contract" and erected a dwelling dissimilar to the one provided in the contract, which is being occupied as the office for Mayer. The court further found that between June, 1967 and March, 1971 the cost of constructing the dwelling increased approximately twenty-one to twenty-eight per cent and that between June, 1967, and March, 1971 the cost of borrowing money increased from six per cent to seven and three-fourths per cent. The court found that Mayer "has made no attempt to perform the contract." Accordingly, the court ordered judgment in favor of the plaintiffs in the following amounts: (1) $1,500 for return of the advance deposit with interest in the sum of $400.00; (2) $5,000 difference between the cost of purchasing a house in June, 1967, and the cost of purchasing a similar home in March, 1971, and (3) $7,000 "for additional cost of financing the purchase of a similar dwelling in March, 1971, as that which could have been purchased in June, 1967," for a total judgment of $13,900.

1. All references are to RSMo 1969, V.A.M.S. and Supreme Court Rules, V.A.M.R., unless otherwise indicated.

After Mayer's motion for new trial was overruled, it perfected its appeal to this court.

The thrust of Mayer's argument is that the court erred in awarding damages in excess of the amount prayed in the amended petition and erred in awarding damages to the Dunnings predicated upon the increased construction costs and the increased interest rates computed as of 1971, rather than 1967. Mayer strenuously urges that the contract was breached by December, 1967 or in January, 1968 and that the measure of damages should be computed as of those dates, rather than in 1971, the date of the trial, and hence the court erred in awarding damages based on the increased construction costs and interest rates. On the other hand, Dunnings urge that the trial court did not err in awarding the judgment of $13,900 even though it exceeded the prayer for relief in the petition since there was a general prayer for relief in the first count for specific performance and that the damages awarded were proper since the amount would restore the Dunnings to the position they would have been had the contract been performed.

Dunnings theory of the case is that because of the unique features of the property they have always been ready, willing and able to perform the contract as agreed to, that Mayer breached the agreement and that they should be entitled to specific performance; that in lieu of specific performance, they should be entitled to damages sustained. Mayer does not challenge that the Dunnings are entitled to their deposit plus interest; it does challenge that damages as to construction costs and increased interest rates should not be computed as of 1971, but rather as of the date it says the contract was breached—1967 or early 1968.

■ This is a case tried without a jury. In such cases it is our duty to review the case de novo, and in doing so weigh the competent evidence and reach our own conclusions and enter such judgment as the trial court should have entered, but in doing so due deference is to be given to the trial judge and his judgment is not to be set aside unless "clearly erroneous." Rule 73.01(d); Kelly v. Schmelz, Mo.App., 439 S.W.2d 211; Biggs v. Moll, Mo.Sup., 463 S.W.2d 881.

■ This case began its history with a petition for specific performance on November 30, 1967 prior to the time performance by the defendant was to have completed the construction of the home. On July 2, 1968, the petition was amended to include Count II—damages for breach of contract. Therefore, this is a case in which the Dunnings sought specific performance of an admitted contract or in the alternative damages for breach of the agreement. Such alternative pleading is, of course, allowed under the Rules, Rule 55.12, § 509.110. When the essential provisions of the agreement are set forth specific performance is proper and possible. Wilkinson v. Vaughn, Mo.Sup., 419 S.W. 2d 1 [10, 11]; Ray v. Wooster, Mo.Sup., 270 S.W.2d 743.

■ The general principle of awarding damages where there has been a breach of contract is that the person damaged is, as far as possible to do so by a monetary award, to be placed in the position he would have been had the contract been performed. He is entitled to recover the value of the contract at the time of its breach or the value of the promised performance, or the value of the benefit contracted for. Boten v. Brecklein, Mo.Sup., 452 S.W.2d 86 [4–8]; see also cases in 22 Am.Jur.2d, Damages, § 46.

■ Here we have a situation where the plaintiffs had agreed to purchase a unique lot and to have constructed upon it a dwelling according to certain specifications. Plaintiffs filed suit for specific performance in November, 1967 and sought to compel Mayer to comply with the express terms of the agreement. In its discretion the court did not grant that remedy

but instead granted damages in lieu thereof. At the time of instituting their action, at the time of the amendment of their petition and at the time of trial plaintiffs still sought to have the contract fulfilled according to the original agreement. The general rule which has long been recognized in equity is that if specific performance is originally possible but the vendor makes it impractical for specific performance to be granted, and if the vendee brings the suit in good faith, supposing himself to be entitled to specific performance and the court cannot grant specific performance, it will retain the case and grant damages. It logically follows that if the court of equity in its discretion does not grant specific performance but instead grants damages that these damages are to be assessed at the time of rendition of the judgment rather than at the time of an indication on the part of the vendor that the contract may not be fulfilled. This was not a simple cause of action for damages for breach of contract—the theory of the plaintiffs' cause was one of specific performance, but in the event that specific performance was not granted, then damages were sought. Ordinarily, damages are to be awarded at the time of the breach but when the suit is brought for specific performance and that remedy is denied, then the plaintiffs are entitled to the equivalent of the performance as of the date when specific performance was given.

Mayer urges that the rules relative to the measure of damages should be applied at the time of the breach of the contract which it contends occurred in 1967 or 1968. This would normally be true but in the posture of this case, Dunnings had an agreement to obtain a particular, unique lot and to have a dwelling constructed according to certain specifications. Dunnings sought to hold Mayer to its bargain by filing suit for specific performance in November, 1967, and as late as the trial still sought specific performance. The equity court once invested with jurisdiction will retain jurisdiction and do full and complete justice. Under the facts and the relief sought, the Dunnings are entitled to the damages as of the time that it was adjudicated that they not be granted the remedy of specific performance.

What then were the damages plaintiffs were entitled to at the time specific performance could have been given? When a contract relating to the purchase of real estate has been breached, the rule in this and most states is that the vendee is entitled to damages in a sum equal to the difference between the unpaid part of the agreed purchase price and the market price of the land. " 'Under the rule generally prevailing in the United States, . . . and the only rule defensible on principle, allowing the purchaser the difference between so much of the contract price as is unpaid and the market price of the land, is applied in every case where the vendor breaks his contract without legal excuse'. Williston, on Contracts, Vol. 5, page 3906, Section 1399." Wilt v. Waterfield, Mo.Sup., 273 S.W.2d 290; Hartzell v. Crumb, 90 Mo. 629, 3 S.W. 59; Krepp v. St. Louis & S F R Co., 99 Mo.App. 94, 72 S.W. 479; Young v. Raupp Realty Co., Mo.App., 305 S.W.2d 731; Kirkpatrick v. Downing, 58 Mo. 32, 17 Am.Rep. 678 (reviewing the conflicting authorities and approving the rule); cases collected in Annot. 48 A.L.R. 12, and see discussion in McCormick, Damages, § 6, 177–185; 55 Am.Jur., Vendor and Purchaser, § 666; and 5 Corbin on Contracts, § 1098. Missouri law has not followed the English rule laid down in Flureau v. Thornhill, 2 W.Bl. 1078, 96 Eng.Rep. 635.

Here we are confronted with a determination of the measure of damages for a breach of a contract to *construct* a dwelling on the property. The measure of damages for a breach of such a contract has been held to be the difference between the price at which the contractor agreed to erect it and the reasonable cost of erection in accordance with the contract requirements. Samuels v. Illinois Fire Ins. Co., Mo.App., 354 S.W.2d 352; Simons v.

Whittmann, 113 Mo.App. 357, 88 S.W. 791. The injured party is entitled to damages measured by the reasonable cost of reconstruction and completion in accordance with the contract, or the difference between the contract price and the cost of doing the work. Samuels v. Illinois Fire Ins. Co., *supra*, 354 S.W.2d at 357; Simons v. Whittmann, *supra*; see also 13 Am.Jur. 2d, Building and Construction Contracts, § 77.

■ Under either theory of the measure of damages—the difference between the market value of the property less the amount of the purchase price unpaid or the costs of construction—there was substantial evidence for the trial court to award damages in the sum of $5,000. There was evidence that the contract price was $23,525, that using the cost approach method of appraisal in 1971 it would require an expenditure of $28,600 to construct the house referred to in the contract, and using the market-data approach the value of the residence to have been constructed on the lot was $28,000. There was therefore sufficient evidence for the trial court to award damages in the sum of $5,000 on this item.

But the award of damages by the trial court in the amount of $7,000 for the additional costs of financing because of the increase in interest rates due to economic conditions in the country raises a different question and presents an issue that apparently has not heretofore been decided. Counsel do not cite any specific authority and independent research has failed to disclose any authority directly governing the point. In cases involving breach of contract by a vendor, numerous specific special damages have been awarded but there is almost a vacuum on this particular point. See Annot., 48 A.L.R. 12, 59–70; 68 A.L.R. 137, 150–152.

Due to economic conditions the interest rates rose from the time the parties entered into their agreement and the time that damages were awarded by the trial court. The loan commitment by Equitable expired in January, 1968 and, so far as the record shows, the Dunnings were not penalized nor charged a fee for not utilizing the loan. Nor does the record show that the Dunnings actually took any steps to contract to purchase another home during the period 1967–1971 nor became obligated in any manner to pay any increased interest rates.

The loss of the bargain relating to the property and dwelling was a real loss for which the Dunnings are entitled to damages as discussed *supra*, but there is no evidence to indicate that the Dunnings suffered any real loss as to the increased interest rates. There is no evidence that they had contracted for or committed themselves for a loan for any particular period of time. In West Hill Construction Corp. v. Horwath, Conn., 149 Conn. 608, 182 A.2d 919, the Supreme Court of Errors held that where the purchasers of a house had a loan commitment bearing interest at 5.5 per cent at the time transfer of title was to have taken place, but by the time of trial the interest rate had become six per cent, the evidence did not support the allowance of the amount representing the difference.

■ We believe under the evidence presented, this item of alleged damages representing the additional costs of financing due to increased interest rates was remote and contingent and should not under the circumstances be awarded.

Plaintiffs therefore are entitled to an award of damages as follows: $1,500 down payment with interest in the amount of $400, and $5,000 representing the difference between the cost of constructing the dwelling in June, 1967 and March, 1971—a total of $6,900.

On this record the plaintiffs did not appeal the ruling of the trial court denying specific performance of the land and have not sought specific performance on appeal. The trial court could have awarded specific performance compelling the transfer of the land and incidental damages sufficient to allow the home contracted for to be built. But, because plaintiffs have not

appealed from the court's failure to grant specific performance, we do not reach the issue whether the court erred in failing to grant such relief.

Inasmuch as the total awarded does not exceed the prayer for relief in the amended petition filed, we need not reach that issue which was raised by the appellant.

The judgment of the trial court in awarding damages in the sum of $6,900 is affirmed. That part of the judgment of the court awarding damages in the sum of $7,000 for additional costs of financing is reversed.

BRADY, C. J., and WEIER and CLEMENS, JJ., concur.