**ST. LOUIS COUNTY, Missouri, Appellant,**

v.

**VILLAGE OF PEERLESS PARK,**
Respondent,

and

**Peerless Land Company, Inc., et al.,**
Intervenors.

No. 34584.

Missouri Court of Appeals,
St. Louis District.

April 24, 1973.

Motion for Rehearing or to Transfer to Court En Banc, or to Transfer to Supreme Court En Banc Denied May 11, 1973.

George F. Gunn, Jr., Thomas W. Wehrle, Clayton, for appellant St. Louis Co.

Shaw & Howlett, Keith W. Hazelwood, Clayton, for defendant Village of Peerless Park.

Richard M. Marshall, Clayton, for intervenor Peerless Land Co.

Hocker, Goodwin, Koenig, Gibbons & Fehlig, St. Louis, for intervenor-respondent Bayless Material Co.

Sheehan & Brown, Arnold, for intervenor-respondent Piros Sign Co.

CLEMENS, Judge.

Suit by St. Louis County for declaratory judgment challenging an annexation by the Village of Peerless Park. The trial court

upheld the annexation and the County appeals. We affirm.

We are met at the outset with the County's contention of res judicata arising from the prior attempt by the Village to annex the same land. The Village filed suit in 1966 under the Sawyers Act, § 71.015[1], to annex two parcels of land. Judgment went against the Village and it appealed. In 1968 while the appeal was pending the Village proceeded to annex the two parcels under § 71.920 which provides for automatic annexation after elections in which the votes are unanimous. It is that annexation the County is now attacking.

Res judicata is inapplicable here. It does not bar a subsequent action where the law under which the first judgment was rendered is different than that applicable to the second action. Mission Theaters v. Twentieth Century-Fox Film Corp., 88 F. Supp. 681 (W.D.Mo.1950). In a Sawyers Act procedure a municipality has the burden to establish the reasonableness of an annexation, whereas under § 71.920 annexation is automatic, subject to the County establishing the *un*reasonableness of the annexation, as will be seen *infra*. We hold that the principle of res judicata is no bar in the suit before us.

This is not the usual annexation suit where a municipality seeks judicial approval of a proposed annexation under the Sawyers Act, § 71.015. Instead, the Village complied with § 71.920 which provides that if voters in both the municipality and the area to be annexed vote unanimously for the annexation ". . . the annexation shall be complete and final and thereafter all courts of this state shall take judicial notice of the limits of that municipality as so extended."

Despite the closing words of that statute, the County does have standing to challenge the annexation here since "the question of reasonableness is still subject to judicial review, with the burden of proof being on the challenger to establish that the annexation is unreasonable, so that, in reality, the effect of § 71.920 is not to do away with judicial review but to change the burden of proof from the municipality to the one making the protest." St. Louis County v. Village of Champ, 438 S.W.2d 205 [2–5], 1.c. 213 (Mo.1969).

We are not faced here with the usual case of a municipality seeking expansion to annex adjacent residential territory into which it is growing. Instead, Peerless Park has annexed an 11-acre tract (Parcel 1) and a 149-acre tract (Parcel 2) principally for industrial purposes. In *Champ*, 1.c. 213, 214, the court declared that an annexation primarily for industrial development is no longer per se unreasonable, and that "the public policy of the state now favors more ambitious industrial development by municipalities . . . and acknowledging the above mentioned change in public policy, it follows that consideration of whether the proposed annexation is 'necessary [or perhaps we should say likely] to foster growth and prosperity' of the annexing city is now entitled to greater weight than it has previously received . . . ."

Our study of the facts has not been helped by the County's 54-page statement of facts in its printed brief. Rule 84.04(c), V.A.M.R., requires a concise statement of relevant facts. The County's brief has no such statement but recites, seriatim, the testimony of 25 witnesses in violation of Rule 84.04(c). We elect, however, to consider the case on its merits.

The trial court filed a detailed statement of facts upholding annexation and we find the following facts to be supported by credible evidence:

The original Village contained 160 acres in west St. Louis County. The Village and the two annexed parcels lay between the Meramec River on the north, a park on the east, and Meramec Station Road on the

---

1. Section numbers refer to RSMo 1959 and 1969, V.A.M.S.

south. The Village now has about 60 residents; in 1960 it had 99.

Parcel No. 1 has about 11 acres, lying at the southeast corner of the Village; Parcel No. 2 has 150 acres lying east of the Village. Part of the Village and all of Parcel 2 are in the flood plain of the Meramec River. Before the 1968 annexation Parcels 1 and 2 were zoned non-urban and flood plain non-urban respectively. Land can be raised out of the flood plain either by filling the land above the known flood level or by building a protective levee of sufficient height. Owners of private property in the Village for three years had been raising the land out of the flood plain by a "fill-type" method.

Interstate Highway I-44 came through the Village in the early 1960s and wiped out the entire business district at the intersection of old highway U.S. 66 and Missouri 141, taking 50 of the Village's 160 acres. Only one business was left after the highway came through; it was rebuilt along Highway 141 in the Village north of the intersection. Other businesses also built and rebuilt along Highway 141. New buildings have been required by Village action to be built on filled ground to raise the buildings out of flood plain. The new businessmen and the Village trustees decided to find a gravel mining operation they could bring into the Village to produce overburden to fill land so the Village could be rebuilt out of flood plain.

The Bayless Building Materials Company located a gravel mining operation in the old Village before the unanimous elections of 1968. After the election the company built a permanent concrete batch plant and bought a new gravel mining barge, all at a cost of $400,000. The company was relying on the fact that they could expand the gravel extraction lake into the newly annexed Parcel 2. The gravel operation and the lake now are located about two-thirds in the old village and one-third in Parcel 2.

A newly erected drivein theater is two-thirds within the old village and one-third on Parcel 2, built primarily on a dirt fill obtained from the Bayless gravel operation. The Peerless Land Company sanitary landfill is in both the old village and in Parcel 2. The earth to cover the landfill is obtained from the overburden of the Bayless gravel operation.

Half of Meramec Station Road was paved, is maintained by the Village and is in better condition than the County's half. Street lights installed by the Village assist the flow of traffic and reduce accidents at intersections. The part of the road east of Highway 141 was the old dividing line between the Village and unincorporated St. Louis County; annexation has placed that portion of the road fully within the Village.

Annexation of Parcel 1 resolves the problem caused by changes in the location of the new service road which put part of the road in Parcel 1 and part of Parcel 1 within the limits of the old Village. Raising Parcel 2 out of flood plain would have a minimal effect on the balance of the County flood plain.

The Village has a contract with the County Police Department for patrol coverage and has a two-way auto radio working with the County's radio system. The County Police enforce State criminal laws within the Village. Four of the Village's police officers are deputized by St. Louis County and the Village has its own fully equipped police car. The Village marshal patrols during the day and evening and on weekends a fully qualified police officer is hired to man the equipment and patrol the Village. There have been no vandalism problems with police protection by the County and the Village's additional police.

The heads of the Village departments of health, public works, electrical, plumbing, building, police and the office of city clerk are all part-time personnel. There is a periodic inspection and testing of the water wells by a private scientific laboratory.

The Village has adopted building and plumbing codes akin to those adopted by

St. Louis County. All new buildings are required to be built in accordance with the codes and also to be built on raised ground out of the flood plain.

The annual budget for the Village is less than $10,000. The property tax rate is $.25 per $100 of assessed valuation; this generates annual revenues of only $700. Additional revenue is derived from taxes, permit fees, fines and from loans made by land owners. If it is allowed to continue to develop, additional tax revenue will be raised by the increased assessed valuation of the real estate now being used as industrial and commercial property under the Village Land Use Ordinance.

Sewage disposal is by individual septic tanks but the Village has completed a layout for an approved sanitary sewer system covering the Village and Parcels 1 and 2. The sewer system cannot be installed until completion of the current operation of raising land out of flood plain by moving the overburden from the gravel operation to the drive-in theater. The landfill operation uses some of the overburden to cover the landfill. The land facing on the west side of Highway 141 has been raised out of flood plain.

The water supply is from wells and water hauled in by trucks; no gas or electrical service is provided for residents.

There are no revenue bond, tax free lands in the Village. The industrial expansion is the natural growth of the metropolitan area as it proceeds westerly along I-44. The Peerless Park area is the last available industrial ground in the Meramec Valley until the Eureka area, several miles further west. Industrial and commercial companies operating in the old Village area include a metals plant, an asphalt plant and a propane gas distributorship plant. The ground in Parcel 2, after being raised, would be worth from $17,500 to $20,000 an acre as industrial ground but it would be practically valueless if left in the flood

plain. The ground facing on Highway 141 which has been newly raised out of the flood plain is worth much more.

Use of land within the Village is governed by the Land Use Ordinance of the Village. Applicants for a change must petition the Board of Trustees of the Village and obtain their approval if the present use of property is to be changed.

Thomas H. Ward, Jr. owns one acre in Parcel No. 1 and his mother owns nine acres. Construction of a service station was begun on the one-acre tract in October, 1966. Part of the service station and facilities are in the Village, part in the County and the County Zoning Ordinance would not permit commercial or industrial use of the property situated in the County. The remainder of the ten-acre tract is undeveloped except for the one residence and is owned by the Ward Development Company. Ward had received an offer of $174,500 for the undeveloped tract in Parcel 1 as a motel site.

Peerless Land Company owns about one-third of the old Village and 83 acres in Parcel 2 and operates a sanitary landfill there.

St. Louis County provides municipal services for County residents and has a zoning ordinance. Although the County has a planning commission for the overall development of the County and to make recommendations to the County council regarding zoning changes, no effort is being made to develop a plan of zoning for the western portion of St. Louis County. The annexation of Parcels 1 and 2 permits the Village to authorize uses of the land that would not be permitted uses in a flood plain. No owners of adjacent land have objected to the annexation.

The trial court found as a matter of law that the annexation of Parcels 1 and 2 by the Village of Peerless Park for the industrial development of the Village is reasonable and declared these factors lend

support to the reasonableness of the annexation:

1. The boundaries of the annexed areas are regular.

2. The street lights of the Village and in the newly annexed area are an important factor in deterring crime and facilitating the flow of traffic.

3. The ground level of the flood plain in much of the old Village and the annexed area has been raised by industry in the Village in cooperation with the Village Board and with the Bayless Materials Company. This has been of great benefit to all citizens in the area.

4. No residents of either the Village, the annexed areas or any adjacent community have made any complaint about the annexation.

5. A modern sewer system is more feasible if the Village and Parcels 1 and 2 are included.

6. The existing industries in the old village have large sums invested in the expansion of their businesses and have overlapped into Parcels 1 and 2.

7. The industrial growth into the annexed area has already benefitted and will probably continue to benefit St. Louis County and the Rockwood School District in the form of increased tax revenue.

8. The business community of the original Village that was completely eliminated by the construction of Highway I-44 has now been partially rebuilt, and the Village requirement that new buildings be raised out of flood plain before they are built has benefitted the new industries in both the annexed areas of Parcels 1 and 2 and the old Village.

9. St. Louis County has done nothing to assist in the elimination of the flooding of the Village or the annexed areas and the annexation by the Village of Parcels 1 and 2 has fostered its growth and prosperity.

10. Industrial and commercial activities have already expanded across the old Village limits.

11. The Village is providing to the newly annexed area additional police protection, building inspections, supervision by the building commissioner and inspectors and water inspection by its health department.

12. The fact that Thomas H. Ward, Jr. will incidentally derive a financial benefit from the annexation is not a reason to hold the annexation unreasonable.

For us to reach a different conclusion we must be able to say (1) the reasonableness of the legislative decision of the Village trustees is not even fairly debatable, (City of St. Joseph v. Hankinson, 312 S.W.2d 4 [7, 8] (Mo.1958)), (2) the County has carried its burden of showing that the Village action was unreasonable, (St. Louis County v. Village of Champ, 438 S.W.2d 205 [2–5] (Mo.1969)), and (3) the judgment of the trial court was clearly erroneous (Rule 73.01(d)). We have re-examined the recited evidence and the trial court's conclusions of law in the light of these principles and conclude the trial court's judgment refusing to invalidate the annexation should stand.

Judgment affirmed.

DOWD, C. J., and McMILLIAN, J., concur.

WEIER, J., not participating.