**BAYLESS BUILDING MATERIALS COM-PANY, Plaintiff-Respondent,**

v.

**PEERLESS LAND COMPANY, Defendant-Appellant.**

**STATE of Missouri ex rel. etc., and the MIS-SOURI LAND RECLAMATION COM-MISSION, Plaintiffs-Appellants,**

v.

**PACIFIC AGGREGATES, INC., Defendant-Respondent.**

Nos. 35228, 35244.

Missouri Court of Appeals, St. Louis District.

March 19, 1974.

Motion for Rehearings or Transfer to Supreme Court Denied April 8, 1974.

Applications to Transfer Denied June 10, 1974.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Lon Hocker, Clayton, for Bayless Building Materials.

**208**

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., William G. Cole, Asst. Attys. Gen., Jefferson City, for the State.

Marshall, Littmann & Ragland, Richard M. Marshall, Clayton, for Peerless Land Co.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Ralph H. Schnebelen, St. Louis, Marshall, Littmann & Ragland, Clayton, for Pacific Aggregates.

PER CURIAM:

Suits in disputes over gravel mining rights with appeals from decrees of the trial court in separate actions which were consolidated for trial. Defendant-appellant Peerless Land Company appeals from the decree of the trial court enjoining it from preventing or interfering with the exercise of certain mining rights found by the trial court to exist in plaintiff-respondent Bayless Building Materials Company (hereinafter "Bayless"). Plaintiff-appellant State of Missouri appeals from the decree denying the State's prayer for injunction requiring Pacific Aggregates, Inc., (a wholly-owned operating affiliate of Bayless) to observe specific mining setback lines under § 444.774(5) RSMo Supp.1971, V.A.M.S., of the Land Reclamation Act.[1]

The critical issue before this court is whether pursuant to a valid enforceable agreement Bayless has sand and gravel mining rights to a specific 40 acres of land owned by Peerless Land Company. We find the existence of such an agreement and thereby affirm the decree of the trial court with modification.

Our determination of the existence of a valid mining agreement between Bayless and Peerless Land Company is dispositive of the State's action under the Land Reclamation Act. Therefore, we shall first set-

tle the matter between Bayless and Peerless Land Company.

In our review of the decision of a court tried case, we are guided by Rule 73.01(d) V.A.M.R. and will not set aside the judgment unless clearly erroneous, and due regard will be given to the trial court's opportunity to judge the credibility of the witnesses. Inferences most favorable to the prevailing party will be drawn. City of St. Louis v. Boos, 503 S.W.2d 133 (Mo. App.1973).

Bayless and its affiliate, Pacific Aggregates, Inc.,[2] conduct sand and gravel mining operations on 15 acres of land owned by Peerless Development Company. (To avoid confusion with defendant Peerless Land Company, Peerless Development Company will henceforth be referred to as Development Company and Peerless Land Company will be referred to as Peerless Land. Bayless, Peerless Land, Development Company and the tracts of land here involved are located within the limits of the Village of Peerless Park.)

Adjoining Bayless' 15 acre mining area is a 30-acre tract of land owned by Peerless Land. Bayless contends that prior to October 14, 1969, it had an oral agreement with Peerless Land to mine 10 acres of the 30-acre tract, as the mining area in the 15-acre tract was nearly exhausted. The 30-acre tract was encumbered by a deed of trust precluding mining operations until released by payment of the deed of trust. The deed of trust was written to permit the release of contiguous acreage as payments would be made for their release.

Also prior to October 14, 1969, Peerless Land had an option to purchase an additional 60 acres of land adjoining its 30-acre tract. Exercise of the option to purchase the 60 acres required a $24,000 earnest money deposit, but Peerless Land had

---

1. §§ 444.760 through 444.786 RSMo Supp.1971.

2. It is not important to this case to maintain the identity of Pacific Aggregates, Inc. There-

fore, all references will be to Bayless even though Pacific Aggregates, Inc., may technically have been involved.

only $8,000 in its treasury. A joint meeting of all of the stockholders and members of the board of directors of Peerless Land was held to seek a solution which would allow it to purchase the 60-acre tract. The directors and stockholders were Thomas Ward, Charles Shaw and James Blind. Ward was chief stockholder of Peerless Land. Blind was the owner of Bayless and was also an officer and director of Peerless Land and the Development Company. At the meeting it was determined that the Development Company had $16,000.00, but that the money was owed to Bayless. Since Bayless' existing 15-acre mining area was nearly exhausted, it was agreed by all the directors and stockholders of Peerless Land that if Bayless would forego the payment of the $16,000 owed to it by the Development Company, that the Development Company would advance the $16,000 to Peerless Land and permit the purchase option to be exercised; that Bayless would receive a total of 40 acres of mining rights in the combined 60 and 30 acre tracts of land which would now be owned by Peerless Land subject to deeds of trust containing the same interdiction against mining as on the 30-acre tract. Thereupon, the following resolution dated October 14, 1969, was adopted by all of the Peerless Land shareholders and the entire board of directors:

"RESOLVED, that the officers of this Company are hereby authorized to make an expenditure of $8,000.00 as payment on earnest money deposit of $24,000.00 to purchase the 60-acre tract of land described in the minutes of the Joint Meeting of the Board of Directors and Shareholders of Peerless Land Company on the 18th day of March, 1969. The Peerless Land Company shall relinquish one-third of this 60-acre tract to Peerless Development Company for the sum of $16,000.00, which said sum of $16,000.00 shall be applied with the $8,000.00 hereinabove mentioned on the earnest money contract as per the Resolution of this Company of March 18, 1969.

The Peerless Land Company shall assume the obligation of meeting the monthly payments on the mortgage on the aforesaid 60-acre tract. The Bayless Building Materials Company shall have gravel rights in 40 acres of the combined tracts, for which Bayless Building Materials Company shall pay to Peerless Land Company royalties in the amount of five and one-half cents per ton. Peerless Land Company hereby acknowledges a 5 percent commission to be due and owing to Henry Dennis for his services in negotiating the transfer and sale of the 60-acre tract to Peerless Land Company. This commission will be paid as follows:

'6 percent of the total commission will be paid to Henry Dennis every month. The total commission is $10,000.00. There shall be a deed of trust on only 57 acres of the 60-acre tract, and the additional acreage shall be released at the rate of $325.00 per acre.' "

The option to purchase the 60 acres was exercised and the land was encumbered by deeds of trust similar to those on the 30-acre tract thereby precluding mining until the deeds were released. In accordance with the corporate resolution of October 14, 1969, Peerless Land did make the mortgage payments and obtained release of the deed of trust on three acres of the 60-acre tract, leaving deeds of trust on 57 acres of the 60-acre tract. Peerless Land also commissioned the Clayton Surveying Company to survey the 3 acres released from the deed of trust encumbrance. Subsequent to October 14, 1969, Bayless entered on a portion of the 40-acre tract in which it claimed to have mining rights and removed substantial amounts of overburden which were placed at Peerless Land's direction on a landfill operation conducted by Mr. Ward.

At trial, Mr. Ward denied knowledge of any agreement between Peerless Land and Bayless which would allow Bayless to conduct mining operations on the 40 acres of land, but there was substantial evidence

from which the trial judge could find to the contrary. The annual reports of Peerless Land for the years 1969, 1970 and 1971, approved by its stockholders, including Mr. Ward, acknowledged that 40 acres of its land were subject to gravel rights at a 5.5¢ per ton royalty under agreement with Bayless. Also, subsequent to October 14, 1969, in an annexation case brought by the Village of Peerless Park and heard by the St. Louis County Circuit Court,[3] Mr. Ward, as chairman of the Village Board of Trustees, testified that Bayless had an agreement with Peerless Land to mine 40 acres in the area owned by Peerless Land and sought to be annexed within the village limits. The Manager of Mr. Ward's landfill operation on property owned by Peerless Land was instructed by Mr. Ward not to permit dumping within a specific 40 acre area because of Bayless' gravel rights to that area. A resolution was adopted by the Board of Directors of Peerless Land on February 23, 1971, providing for the employment of an engineer to plat the boundaries of the Bayless mining operation on Peerless Land's property, further indicating the existence of a mining agreement between Peerless Land and Bayless.

In August, 1972, Peerless Land erected a fence between its property line and the Development Company's 15-acre tract in which Bayless had been conducting its mining operations, thus preventing Bayless from doing any further mining in the Peerless Land's 40-acre tract in which Bayless contends it has mining rights.

The trial court found that the minutes of the Peerless Land meeting of October 14, 1969, constituted a sufficient memorandum to satisfy the statute of frauds; that the removal of the overburden and the commencement of mining in the 40-acre tract by Bayless was sufficient partial performance to take the agreement out of the statute of frauds.

The trial court further found that the 40 acres in which Bayless was to have its mining rights was identified with sufficient specificity and enjoined Peerless Land from interfering with the exercise by Bayless of its gravel rights within the 40 acres described in the court's decree. The trial court determined that since all of the officers, stockholders and directors of Peerless Land were aware of the deed restrictions precluding mining until the deeds of trust were paid and released and because of the thin financial condition of Peerless Land that it was therefore contemplated and intended that Bayless should be allowed to apply the gravel mining royalty payments directly to the holders of the deeds of trust and thereby secure the release of the deeds of trust. The trial court found that the reasonable time for the extraction of the gravel would be three years commencing from the date of release from the deed of trust of each portion of land so released.

There were other conditions of the decree, which we do not find necessary to discuss as bearing on the issues to be determined in this case, but which are affirmed except as hereinafter specifically modified.

Peerless Land appealed alleging that the trial court erroneously created a contract and the terms of contract for the parties; that if a contract existed, it was unenforceable under the statute of frauds; that even if a valid contract existed, it would be unenforceable against Peerless Land as it was unfairly imposed upon the corporation by James Blind, as officer and director of Peerless Land, in breach of his fiduciary duty.

"As to the elements necessary to be present in order that the statute (of frauds) be satisfied, the following are required: (1) the parties; (2) the subject matter; (3) the premises upon both

---

3. The decision of the Circuit Court approving the annexation was affirmed in St. Louis County v. Village of Peerless Park, 494 S.W.2d 673 (Mo.App.1973).

sides; (4) the price; and (5) the consideration." Midland Realty Company v. Manzella, 308 S.W.2d 326 (Mo.App. 1957), 1. c. 330.

We agree with the trial court that the Peerless Land corporate resolution of October 14, 1969, constituted a sufficient written memorandum to remove the impediment of the statute of frauds, § 432.-010 RSMo 1969, V.A.M.S. It is not essential that the memorandum be contained in a single document. The essential elements may be contained in a series of writings or documents. Midland Realty Company v. Manzella, *supra*. It is not necessary to find definiteness of terms or that the contract be detailed, Watkins v. Watkins, 397 S.W.2d 603 (Mo.1965). Where, as we determine here, the essential elements of the agreement are set forth, specific performance is proper. Dunning v. Alfred H. Mayer Co., 483 S.W.2d 423 (Mo.App.1972). The resolution here adequately describes the parties, the premises, the price, the consideration and together with other evidence before the court, the subject matter is adequately covered. Frostwood Drugs, Inc. v. Fischer & Frichtel Const. Co., 352 S.W.2d 694 (Mo. 1961), relied on by Peerland Land is inapposite, for the Frostwood case involved an attempt to render nugatory and vary the specific terms of a written document by oral testimony. Such is not the case before us.

Bayless has yet another basis in support of its position that the mining rights granted to it would be outside the statute of frauds, through its performance of the contract. In addition to its advancement of $16,000 to permit the exercise of the option to purchase the 60-acre tract of land, there was clear evidence that Bayless had removed substantial quantities of overburden from the 40 acre area in which it was to conduct mining operations. The removal of the overburden was, of course, of benefit to Bayless, as its removal would be necessary to the commencement of mining operations. But Peerless Land also received benefit from the removal of the overburden, as the top soil was used in its landfill operations. In Alonzo v. Laubert, 418 S.W.2d 94 (Mo. 1967), the court discussed the doctrine of part performance as it relates to removal of the statute of frauds from application. There, the court said, 1. c. 97:

"There must have been *sufficient part performance* to convince the chancellor that fraud will result from a literal application of the statute. Mere payment of money is insufficient. 'But if services are to be rendered instead of paying money and the services are fully performed, the statute cannot be used to produce fraud.'" (Quoting from 20 St. Louis L.Rev. 97, at 106.)

Here, the performance by Bayless was clearly referrable to a contract between Bayless and Peerless Land. Bayless' entry upon and possession of the land pursuant to the agreement and performing work thereon was sufficient part performance to take the contract out of the statute of frauds. Anderson v. Abernathy, 339 S.W. 2d 817 (Mo.1960). The trial judge could find that the performance by Bayless pointed to a contract granting gravel rights and could therefore properly find the performance eliminating the operation of the statute of frauds. Alonzo v. Laubert, *supra*. See also Grissum v. Reesman, 505 S. W.2d 81 (Mo.1974).

As to the memorandum of agreement, Peerless Land first contends that there is not sufficient identification of the 40 acres to be mined. We disagree. The same issue was presented in Blankenship v. Porter, 479 S.W.2d 409 (Mo.1972), and Duelen v. Wilkinson, 473 S.W.2d 357 (Mo.1971). In Blankenship, the court said, 479 S.W.2d 1.c. 412:

"The first issue is whether the description of the land to be conveyed is sufficient to satisfy the statute of frauds, or stated another way, whether the description is sufficient to enable the parties to

locate and identify the land. As stated in Ray v. Wooster, Mo., 270 S.W.2d 743, 750, the description is sufficient 'if the property can be identified with reasonable certainty with the aid of the data supplied by the instruments and a consideration of the attending circumstances.' The evidence in this case clearly shows that the land intended to be conveyed was all the land owned by appellants north of the highway and south and east of the railroad. That land can easily be located, identified and described. The description in the contract is sufficient."

In Duelen v. Wilkinson, *supra,* it was stated that there was "no dispute with respect to the price and it and the mode of payment are shown by the contract. These factors were sufficient to enable plaintiffs to ascertain the exact description from Wilkinson's abstract or title in possession of their mortgagee." (473 S.W.2d 1. c. 362) The court there noted that the statute of frauds would be removed if there were available writings or other documents to serve as a guide to which the other property could be identified with certainty.

■ In Wilt v. Waterfield, 273 S.W.2d 290, at 294 (Mo.1954), it was said:

"If a contract for the sale of land fails to describe the land sufficiently to meet the requirements of the Statute of Frauds, it is not void, but voidable. (Citations omitted.) If there is sufficient compliance with the Statute of Frauds, the contract is valid and the statute would not apply. The test is, What is sufficient identification of the property which is the subject matter of the contract? This was answered in Herzog v. Ross, 355 Mo. 406, 409, 196 S.W.2d 268, 270, 167 A.L.R. 407; ' "The rule may be stated thus: The land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper; but the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." ' "

In this case, the evidence was such to specifically identify the 40 acres determined by the trial judge to be that agreed upon by the parties. In the Peerless Park annexation case, the testimony of Mr. Ward was that Peerless Land had an agreement with Bayless which permitted Bayless to mine a specific 40 acres of land in the area sought to be annexed; at least one witness testified that Mr. Ward had specifically identified a 40 acre tract of land in which landfill operations were not to be conducted as Bayless had mining rights to that 40-acre tract; a survey ordered by Peerless Land which was prepared February 23, 1971, specifically identified as the only 40 acre tract that same area determined by the trial judge to be the 40 acres referred to by the parties; another survey ordered by Peerless Land to indicate three acres released from the stricture of the deed of trust specifically located the acreage within the 40-acre tract; the removal of overburden was conducted solely within the 40 acre tract; the Peerless Land landfill operation halted at the southmost line of the 40-acre tract and did not violate the boundaries; there was clear evidence that the 40-acre tract referred to by the trial court was the only feasible area in which mining operations could be conducted, and the specific areas released from the encumbrance of the deed of trust were located within the 40-acre tract and subsequent release of contiguous acreage could only extend into that 40-acre area described by the trial judge. Given the evidence in this case, there is no problem under the surrounding circumstances to identify the particular 40 acres with sufficient specificity. Duelen v. Wilkinson, *supra.*

■ We likewise find proper the court's determination that Bayless was entitled to mine for a continued period of three years from and after the release of the deed of trust encumbrance on the acreage so encumbered. In Wilkinson v. Vaughn, 419 S.W.2d 1 (Mo.1967), the court was faced with an attack on the sufficiency of a contract in that it provided no specific time

for performance. In overruling the challenge, the court quoted from Ray v. Wooster, 270 S.W.2d 743 (Mo.1954), stating, l.c. 5:

" 'Where time of performance is not made the essence of the contract an ambiguity in that respect will not defeat specific performance. In such cases it is implied that performance may be required within a reasonable time.' "

In this case, there was evidence that it might take up to ten years to mine the area involved. The three year time limitation also comports with the provisions of § 444.020, RSMo 1969, V.A.M.S., which give a mining permittee a term of three years to mine an area in which the owner has given consent to perform such mining operations. Inasmuch as the parties were fully aware of the existence of the deed of trust encumbrance, and as it has been determined that it was fully intended that Bayless should have mining rights to the 40 acres, it was a reasonable conclusion of the trial court to utilize the date of release of the encumbrance as a point of commencement of the mining rights to the particular acreage and a period of three years therefrom as a reasonable term for mining in each area released.

■■ We cannot, however, read into and cause to be a part of the agreement that Bayless should have the right to make the royalty payments it would owe to Peerless Land for the mining rights directly to the holder or holders of the notes secured by the deeds of trust. Before an obligation may be implied into a contract, it must appear that such an obligation was clearly contemplated by the parties and that the inference of the obligation is necessary to effectuate the purpose of the contract. Glass v. Mancuso, 444 S.W.2d 467 (Mo. 1969); Conservative Federal Savings and Loan Assn. v. Warnecke, 324 S.W.2d 471 (Mo.App.1959). We cannot presume that Peerless Land will not meet the payments of the land as it has agreed to in the memorandum of agreement of October 14, 1969,

and writing into the agreement the provision which allows Bayless to make the payment directly to the holder of the deed of trust thereby bypassing Peerless Land cannot, on this record, be said to be clearly contemplated by the parties.

But it is evident from the terms of the mining agreement as contained in the resolution of October 14, 1969, that Peerless is obligated to make the monthly payments on the mortgage and secure the release thereof, and by the decree of the trial court, as affirmed by this court, it must do so. However, Peerless may take the mortgage payments from whatever funds it has available to it, not necessarily restricted to the mining royalty payments it receives from Bayless. But neither may Peerless thwart the purpose of the trial court's decision, as hereby affirmed, by its failure to make the necessary monthly mortgage payments and secure the release of the deeds of trust, and in the event Peerless Land should fail to do so, Bayless, in order to carry out the intent and purpose of this decree, will then be authorized to apply the mining royalty payments due Peerless Land directly to the holders of the deeds of trust and secure the release thereof. This modification is necessary to effectuate the intent of the parties and is properly within the court's power for full, adequate and complete justice and to avoid a multiplicity of suits. Wallach v. Joseph, 420 S. W.2d 289 (Mo.1967), cert. denied, Friedman v. Wallach, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967); Kerrick v. Schoenberg, 328 S.W.2d 595 (Mo.1959). Therefore, to the extent that Peerless Land may make payments on the deeds of trust by funds other than Bayless' mining royalties, the decree of the trial court is modified, but in all other regards, it is affirmed.

■ We find no merit in Peerless Land's contention that Mr. Blind had breached his fiduciary duty as officer and director of Peerless Land by imposing unfair terms upon his own corporation. The transaction was open and fair and there

**214**

was no evidence to show that Mr. Blind, as owner of Bayless, gained unconscionable or secret profits. A director or officer of a corporation is not prohibited from doing business with the corporation and making a profit therefrom. Ramacciotti v. Joe Simpkins, Inc., 427 S.W.2d 425 (Mo.1968). The other directors and shareholders of Peerless Land were fully advised, consented and participated in the transaction giving Bayless mining rights in Peerless Land's property and, therefore, in this case, are not in position to attack the transaction. Hawkins v. Mall, Inc., 444 S.W.2d 369 (Mo.1969); Ramacciotti v. Joe Simpkins, Inc., *supra*.

The State's action against Bayless is bottomed on § 444.774(5) RSMo Supp. 1971 of the Land Reclamation Act which requires certain lateral support lines to be maintained in surface mining operations. The state has claimed that the lateral support lines have not been maintained between Bayless' existing 15 acre mining area and the adjoining 40 acres in which it has commenced its mining operations. The foregoing section of the Land Reclamation Act contains an exception to the lateral support lines requirement where there is a mutual agreement between the operator and the adjacent property owner. Since it has been determined that a mining agreement exists between Peerless Land and Bayless, the setback line provisions of the Land Reclamation Act do not apply between the existing 15 acre mining tract and the 40 acre tract, as the mining operation abutting the Peerless Land property line was within the exception of § 444.-774(5) RSMo Supp.1971 because of the agreement. The trial court's dismissal of the state's petition for injunction against Bayless was proper.

The decrees of the trial court are thereby affirmed except as modified with regard to the method of payment by Peerless Land of the monthly mortgage payment.

All Judges concur.